STATE OF MAINE *vs.* S. H. MAYO.

Hancock. Opinion October 1, 1909.

*Ways. Right to Use Same not Absolute. Automobiles May be Restricted in Such Use. Constitutional Law. Class Legislation. Police Power of the State. Ordinance Authorized by Express Legislative Authority. United States Constitution, XIV Amendment. Constitution of Maine, Article I, section 1. Private and Special Laws, 1903, chapter 420.*

The right to use the public streets for the purposes of travel as well as all personal and property rights, is not an absolute and unqualified right. It is subject to be limited and controlled by the sovereign authority, the State, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people. To secure these and kindred benefits is the purpose of organized government, and to that end may the power of the State, called its police power, be used.

By the exercise of the police power of the State, through legislative enactments, individuals may be subjected to restraints, and the enjoyment of personal and property rights may be limited, or even prevented, if mani-

festly necessary to develop the resources of the State, improve its industrial conditions, and secure and advance the safety, comfort and prosperity of its people.

Reasonable regulations for the safety of the people while using the public streets are clearly within the police power of the State, and in the exercise of that power the State may regulate the speed, and enact other reasónable rules and restrictions as to the use of autcmobiles upon the public streets.

It is fundamental law that no constitutional guaranty is violated by an exercise of the police power of the State when manifestly necessary and tending to secure general and public benefits.

A law is not to be regarded as class legislation simply because it affects one class and not another, provided it affects all members of that same class alike, and the classification involved is founded upon a reasonable basis. Such a law is general and not special.

When the legislature has constitutional authority to enact a law to promote the public safety, and does enact it, the expediency of its enactment is not to be passed upon by the court. In such case the legislature determines by the enactment that the law is reasonable and necessary.

In certain sections of Maine such as Mount Desert Island and the vicinity of Bar Harbor, public highways have been constructed along precipitous mountain sides, through circuitous defiles, over deep ravines and on the very edges of ocean cliffs. The use on such ways of the powerful, swiftly moving, and dangerous automobile must necessarily endanger all who travel thereon, and especially those who ride in carriages drawn by horses. Presumably to safeguard the people against such dangerous conditions the legislature decided that the ordinance in the case at bar might be made. It seems reasonable and expedient ; but as to that the judgment of the legislature is conclusive.

Where a municipal ordinance was not made under a general law authorizing municipalities to make reasonable regulations for the safety and welfare of the people, but was made under a special legislative enactment authorizing such ordinance, *held* that the legislature by its enactment had determined the question of the reasonableness of the proposed ordinance and its decision was conclusive.

Where the town of Eden, under express legislative authority, passed an ordinance closing to the use of automobiles certain public streets in that town, *held* that the legislative enactment which authorized the closing to the use of automobiles such streets, was not repugnant to any constitutional provision and that the ordinance was constitutional.

On agreed statement of facts. Judgment for the State.

This case was reported to the Law Court for decision upon an "agreed statement of facts," which states the case as follows :

"This is a criminal prosecution for breach of a town ordinance.

passed by authority of a special act of the Legislature of Maine. A. D. 1903, approved March 28th A. D. 1903, entitled 'An Act in regard to use of the roads in town of Eden.' Said ordinance having been passed at a special town meeting, legally called and held in Bar Harbor, town of Eden, Hancock County, Maine, on the first day of July, A. D. 1903.

"The respondent S. H. Mayo, was arrested on a warrant duly issued by the Bar Harbor Municipal Court on the 5th day of April, A. D. 1909, entered a plea of not guilty, was found guilty by said court, and sentenced to pay a fine of five dollars and costs of prosecution, from which sentence he appealed to the Supreme Judicial Court for Hancock County.

"All the requirements of the special act and the ordinance passed by the town of Eden, have been complied with on the part of the town, by its municipal officers. The warrant was properly drawn, served and returned. The respondent came in over the Eagle Lake road, from Eagle Lake to the head of Mount Desert street, in said Eden, being one of the roads specified in said special act and ordinance, in a motor vehicle propelled by its own power, with full knowledge of the existence of said ordinance prohibiting the use of automobiles and motor vehicles on said road.

"The Ocean Drive, Bay View Drive, from Duck Brook bridge to Hulls Cove bridge, the Eagle Lake roads as far as Eagle Lake and the Green Mountain drive, are the only entrances by land into that part of the town of Eden, known as the village of Bar Harbor. Closing the above roads make the entrance into Bar Harbor by motor vehicles over existing roads impossible. The said Eagle lake road from Eagle lake to head of Mt. Desert street is a crooked and hilly road."

Chapter 420, Private and Special Laws, 1903, provides as follows:

"Sec. 1. The town of Eden in the county of Hancock, at any legal meeting of the voters thereof may close to the use of automobiles the following streets within its limits: Ocean Drive, Bay View Drive, from Duck Brook bridge to Hull's Cove bridge, the Eagle Lake roads as far as Eagle Lake and the Green Mountain

drive. Any street so closed shall be marked at the entrance thereof by sign boards in large letters 'No automobiles allowed on this road.'

"The term 'automobile' as used in this section applies to all motor vehicles propelled by power. For the violation of this act the town of Eden may vote at said meeting what punishment shall be inflicted for the violation thereof, but for the first offense, not over twenty-five dollars and cost of prosecution; for the second offense, not over twenty-five dollars or thirty days' imprisonment, or both and cost of prosecution.

"Sec. 2. This act shall take effect when approved."

At the special town meeting held in the town of Eden, July 1, 1903, the following votes were passed:

"Article 1.—B. E. Whitney was elected moderator and was sworn by the clerk.

"Article 2—Voted—That the following streets be closed to the use of automobiles in the town of Eden: Ocean Drive, Bay View Drive from Duck Brook bridge to Hulls Cove bridge; both Eagle Lake roads, as far as Eagle Lake, and the Green Mountain Drive.

The following amendment was offered and carried: Any street so closed shall be marked at the entrance thereof by sign boards in large letters, 'No automobiles allowed on this road.'

"Article 3—For the violation of the foregoing act the person so offending for the first offense shall be punished by fine not exceeding $20 and costs of prosecution; for the second offense by a fine not exceeding $25 or 30 days imprisonment or both and costs of prosecution."

*Wiley C. Conary*, County Attorney, for the State.

*Herbert L. Graham*, for defendant.

SITTING: WHITEHOUSE, SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

KING, J. The question presented is this: Is the ordinance of the town of Eden, passed under express legislative authority, closing to the use of automobiles certain public streets in said town, constitutional?

VOL. CVI 5

The contention of the defendant is that it violates the Fourteenth Amendment of the constitution of the United States which declares, among other things, that no State shall "deny to any person within its jurisdiction the equal protection of the laws," and that it also denies him that equality of right guaranteed under sec. 1, Art. I, of the Constitution of Maine, "of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

It is an equal right of all to use the public streets for purposes of travel, by proper means, and with due regard for the corresponding rights of others; and it is also too well recognized in judicial decisions to be questioned that an automobile is a legitimate means of conveyance on the public highways. But the right to so use the public streets, as well as all personal and property rights, is not an absolute and unqualified right. It is subject to be limited and controlled by the sovereign authority—the State, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people. To secure these and kindred benefits is the purpose of organized government, and to that end may the power of the State, called its police power, be used. By the exercise of that power, through legislative enactments, individuals may be subjected to restraints, and the enjoyment of personal and property rights may be limited, or even prevented, if manifestly necessary to develop the resources of the State, improve its industrial conditions, and secure and advance the safety, comfort and prosperity of its people. And it is fundamental law that no constitutional guaranty is violated by such an exercise of the police power of the State when manifestly necessary and tending to secure such general and public benefits. *Commonwealth* v. *Alger*, 7 Cush. 53; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Stone* v. *Mississippi*, 101 U. S. 814; *Barbier* v. *Connolly*, 113 U. S. 27; *Thorpe* v. *Rutland R. R. Co.*, 27 Vt. 150; *Wadleigh* v. *Gilman*, 12 Maine, 403; *Boston & Maine R. R. Co.* v. *County Com.*, 79 Maine, 386; *State* v. *Robb*, 100 Maine, 180; *Jacobson* v. *Massachusetts*, 197 U. S. 11.

That reasonable regulations for the safety of the people while using the public streets are clearly within this police power of the

State is too plain to admit of discussion. Such is and has been the law everywhere.

Since the introduction of automobiles as vehicles of conveyance many cases have arisen and been decided by the courts of last resort in different States respecting the validity and construction of statutes and ordinances regulating their use upon the public highways, and it has been uniformly held that the State, in the exercise of its police power, may regulate their speed and provide other reasonable rules and restrictions as to their use. *Commonwealth* v. *Boyd*, 188 Mass. 79; *Commonwealth* v. *Kingsbury*, 199 Mass. 542; *Christy* v. *Elliott*, 216 Ill. 31; *People* v. *Schneider*, 139 Mich. 673; *People* v. *McWilliams*, 86 N. Y. Supp. 357; *Fletcher* v. *Dixon*, (Md.) 68 Atl. Rep. 875; *State* v. *Swagerty*, 203 Mo. 517. See Note and cases collected therein, Vol. 12 Ann. Cas., page 291.

The defendant however objects against the validity of the ordinance in question here that it applies to automobiles only, and not to all other vehicles that use those streets. He contends that it "operates against a class only," and is therefore special legislation which the Constitution inhibits. That contention cannot prevail. This same objection to the constitutionality of statutes and ordinances regulating the use of automobiles, that they apply only to one particular class of vehicles, has been repeatedly raised in recent cases and as repeatedly decided to be without merit. In *Barbier* v. *Connolly*, supra, Mr. Justice FIELD, speaking for the Supreme Court of the United States, said: "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the Amendment." In *Christy* v. *Elliott*, supra, wherein this same objection was made to the validity of legislation regulating the speed of automobiles, the Illinois Supreme Court said: "Such laws as the Act here in question have never been regarded as class legislation simply because they effect one class and not another, inasmuch as they effect all members of the same class alike, and the classification involved in the law is

founded upon a reasonable basis. 'If these laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply : and they are then public in character, and of their propriety and policy the legislature must judge.' (Cooley's Const. Lim.—6th ed.—497-481.)" In *State* v. *Swagerty*, 203 Mo. 517, it is said : "The principal objection urged against the act is that it is a special law because it legislates only upon automobiles, and does not attempt to legislate upon all vehicles using the public highways. We are unable to concur with the defendant in this view. The act applies to and affects alike all members of the same class. . . . It does not refer to particular persons or things of a class and is, therefore, a general and not a special law."

The ordinance in question is general and not special, for it applies equally to all automobiles without discrimination, wherever or by whomsoever owned. The streets in question are closed to all automobiles without any distinctions.

The defendant further contends that this ordinance is unreasonable, and unnecessary for the public safety and welfare.

It is to be noted, however, that the ordinance in question was not made under a general law authorizing municipalities to make reasonable regulations for the safety and welfare of the people.

Here the legislature enacted the specific regulation that might be made. It determined the streets that could be closed to automobiles, and it has passed upon the question whether it is reasonable and for the benefit of the people that those streets should be so closed. When the legislature has constitutional authority to enact a law, and does enact it, the expediency of its enactment is not to be passed upon by the court. The legislature determines if the law is reasonable, and will promote the public welfare, and its determination is conclusive. Such is the well settled law.

"In all cases where the legislature have a constitutional authority to pass a law, the reasonableness of it seems to be a subject for their decision." *Lunt's Case*, 6 Maine, page 414.

"When the legislature decides, that an Act is reasonable and for the benefit of the people, as it does by making the enactment under

the sanction of an oath to support the constitution, that decision must be conclusive, if the enactment be not repugnant to any provision of the constitution, and be not made colorably to effect one purpose under the appearance of effecting another." *Moor* v. *Veazie*, 32 Maine, page 360.

In *Jones* v. *Sanford*, 66 Maine, page 589, the late Chief Justice PETERS, speaking of the authority of the court to pass upon the question of the reasonableness of a by-law or local ordinance, said :

"This principle does not apply, where that is done by a municipal corporation which is directly authorized to be done by the legislature.   But where the power granted is a general one, the ordinance passed in pursuance of it, must be a reasonable exercise of the power or it is invalid."

Touching the question as to what extent, if at all, the court could review the reasonableness of the legislation to promote the public welfare, Mr. Justice HARLAN, speaking for the Supreme Court of the United States, in *Jacobson* v. *Massachusetts*, 197 U. S. page 11, said :  "Upon what sound principles as to the relations existing between the different departments of government can the court review this action of the legislature?  If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

The right of the legislature, acting under its police power, to make reasonable regulations respecting the use of automobiles on the public highways in order to secure the public safety is well settled, as we have seen.   This enactment, which authorized the closing to the use of automobiles of the streets in question, we do not find to be repugnant to any constitutional provision.   In making it the legislature decided that the regulation was necessary and reasonable in order to secure the public safety and welfare, and it

cannot be affirmed that such will not be its effect. The regulation is clearly within the police power of the legislature to enact, its manifest tendency and effect is to accomplish the purpose for which it was intended, and accordingly its reasonableness and expediency cannot be reviewed by the court. The judgment of the legislature in that respect is conclusive.

If, however, the court were authorized to review that judgment it would be found supported in sound and convincing precedents.

In 1848 the Supreme Court of Massachusetts, in sustaining the validity of an ordinance excluding omnibuses from certain streets in Boston, thus spoke, quite prophetically : "To take a strong case : Suppose the proprietor of the omnibuses from Roxbury should deem it expedient to propel his carriages by steam power, passing through Washington Street, at a rapid rate, would it not be a lawful and proper regulation for the mayor and aldermen to prohibit the using of Washington Street by vehicles propelled by steam power? We cannot doubt that it would."

Sixty years after, in 1908, the same court has unhesitatingly decided that the legislature has the right, acting under the police power, to prescribe that automobiles shall not pass over certain streets or public ways in a city or town. *Commonwealth* v. *Kingsbury*, 199 Mass. 542. We quote with approval from that case.

"Automobiles are vehicles of great speed and power, whose appearance is frightful to most horses that are unaccustomed to them. The use of them introduces a new element of danger to ordinary travellers on the highways, as well as to those riding in the automobiles. In order to protect the public great care should be exercised in the use of them. . . . It seems too plain for discussion that, with a view to the safety of the public, the legislature may pass laws regulating the speed of such machines when running upon the highways. The same principle is applicable to a determination by the legislature that there are some streets and ways on which such machines should not be allowed at all. In some parts of the State, where there is but little travel, public necessity and convenience have required the construction of ways which are steep and narrow, over which it might be difficult to run an automobile, and where it

would be very dangerous for the occupants if automobiles were used upon them. In such places it might be much more dangerous for travellers with horses and with vehicles of other kinds if automobiles were allowed there."

In certain sections of our State, such for example as Mount Desert Island and the vicinity of Bar Harbor, public highways have been constructed along precipitous mountain sides, through circuitous defiles, over deep ravines, and on the very edges of ocean cliffs. They have been so made to afford access to some of Maine's famous and picturesque scenery. The use on such ways of the powerful, swiftly moving and dangerous automobile must necessarily endanger all who travel thereon, and especially those who ride in carriages drawn by horses. Presumably to safeguard the people against such dangerous conditions the legislature decided that the ordinance in question might be made. It seems reasonable and expedient; but as to that the judgment of the legislature is conclusive.

It is the opinion of the court that the ordinance which the defendant admittedly violated is constitutional, and accordingly the entry must be,

*Judgment for the State.*