57 N.J. Super. 142 (1959)
154 A.2d 23
RIDGEVIEW CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF FLORHAM PARK, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 30, 1959.
*143 Messrs. Young and Sears, attorneys for plaintiffs.
Messrs. Salmon and Bennett, attorneys for the Borough of Florham Park.
Mr. Frank J. Valgenti, Jr., attorney for defendant Sixth National Corp.
*144 STANTON, J.S.C.
This is an action in lieu of prerogative writ challenging the validity of certain provisions of the zoning ordinance of the Borough of Florham Park.
The action was brought also against the board of adjustment of the borough. The first count of the complaint filed on June 6, 1958 alleges that on January 30, 1958 the corporate plaintiff applied for a variance for the erection of a commercial retail structure, having a ground floor area in excess of 5,000 square feet. The borough enacted a general revision of its zoning ordinance on August 3, 1954. The following addition by way of amendment was made on February 5, 1957:
"Section 7.1 B(a)  The maximum ground floor area permitted for any individual store shall be 5000 square feet. The minimum floor area permitted for any individual store shall be 1500 square feet."
The application for a variance was denied by the board of adjustment on April 23, 1958. This count challenged that determination.
In the second count the corporate plaintiff alleged that on the same date it applied for a variance to erect two commercial retail structures on a parcel of land described in the complaint and said to be situate partly in the B-2 business zone and partly in the R-3 residential zone, one having a ground floor area in excess of 5,000 square feet, and the other less than 1,500 square feet. This application was also denied. In this count relief was sought solely against the board of adjustment.
In the third count the corporate plaintiff challenges the validity of section 7.1 B(a) of the zoning ordinance on the ground that its provisions are arbitrary, capricious, unlawful, discriminatory, and bear no relation to the purposes of zoning as set forth in R.S. 40:55-30 et seq. It questioned on like grounds the placing of lot 2 in Block 19, partly in a B-2 zone and partly in a R-3 zone.
To meet an objection that the corporate plaintiff was not the owner of the lands in question, the complaint was amended *145 to add as plaintiffs certain individuals who held legal title to the property and who had entered into contractual relations with the corporate plaintiff for its sale.
By an amendment of the zoning ordinance adopted on October 21, 1958 all of the lands here involved were placed in the B-2 zone. It also added section 4.3, which created a 50-foot buffer area in a B-2 zone where it abuts a residential zone, and it amended section 9.5.1 (g) so as to require six square feet of parking area for each square foot of gross floor area of business, commercial and personal service establishments and retail stores. It also revised the zoning map.
On November 24, 1958 the plaintiffs filed their second amendment to the complaint wherein they charged that the said provisions of the amendatory ordinance are invalid.
By a consent order Sixth National Corp., the owner of a shopping center in the vicinity, was permitted to intervene as a party defendant. Before trial there was a dismissal by stipulation of the first and second counts of the complaint. This eliminated the board of adjustment from the action.
The revised ordinance of 1954 fixed the maximum percentage of coverage of all buildings in a B-2 zone at 30%; by the February 5, 1957 amendment this was reduced to 20%. In the revised ordinance, the parking space ratio was fixed at 2 to 1; the amendment of February 5, 1957 increased it to 4 to 1, and that of October 21, 1958, to 6 to 1.
The borough contends that the challenged provisions of the ordinance are in all respects valid. The defendant Sixth National Corp. asserted as a separate defense that it "has a vested right to the enjoyment of the ordinance, its privileges and burdens, as presently effective and regulatory." In its answer to the second amendment of the complaint, it stated that it had no interest in the allegation thereof "other than to assert and protect its rights under the provisions of Section 7.1 B(a) of the zoning ordinance of the Borough * * *." This section fixes the minimum and maximum floor area for an individual store.
*146 The testimony in the case came with one exception from experts. Robert F. Edwards, who has been engaged in the city and town planning field since 1941, and who is presently employed in that work by the Town of Montclair, testified he had never seen a maximum ground floor limitation in any ordinance except that of the City of Summit, where a maximum of 80,000 square feet is fixed for shopping centers. He said the effect of the instant provision is to eliminate supermarkets which he said have an average ground floor area in excess of 5,000 square feet; and he added such markets are in reality neighborhood stores. He said that it eliminates furniture stores which require display areas; and has the effect of eliminating variety stores, which ordinarily require space in excess of 5,000 square feet. He referred to the average ground floor area of stores in shopping centers as disclosed in professional reports, some of them being as follows:

 Bakery ............................ 1200  1800 sq. ft.
 Bank .............................. 2000  3600 " "
 Barber shop ....................... 1000 " "
 Candy store ....................... 1000 " "
 Laundry pick-up store ............. 750  2000 " "
 Furniture ......................... 900  12000 " "
 Grocery ........................... 5000  8000 " "
 Hardware .......................... 1500  4000 " "
 Jewelry stores .................... 1200  2000 " "
 Women's wear ...................... 1200  4000 " "
 Variety stores .................... 10000 " "

With respect to the minimum floor area requirement, he said he was aware of no such provision in any zoning ordinance as regards business buildings, though such a provision is common in the case of dwellings.
He testified that the provision with respect to maximum floor area bears no relation to any of the purposes of zoning set forth in R.S. 40:55-32, except possibly to the overcrowding of land. However, that is eliminated here by reason of the restriction of land coverage to 20%. He expressed the opinion that the maximum floor area requirement *147 was extremely unreasonable. As to the minimum requirement, he stated that there is no reasonable relationship between it and the statutory purpose of zoning, and that in his opinion it was entirely unreasonable.
He testified that the plaintiffs' property is situate within a triangle bounded by South Orange Avenue, Ridgedale Avenue, and Park Street. The apex of the triangle formed by South Orange Avenue and Park Street is zoned for residential use, the lower part of it having its base on Ridgedale Avenue is zoned for B-2 use. In this latter part there are both business and residential uses. The property of Sixth National Corp. is located on Ridgedale Avenue, opposite the plaintiffs' property. Several other stores are situate on that side of Ridgedale Avenue, and between these stores and South Orange Avenue is a large rollerskating rink. Across South Orange Avenue from the triangle there is a large area of land mostly vacant, but near Ridgedale Avenue there is a gasoline station, and opposite the apex of the triangle there is a large building containing bowling alleys open to the public. The lands opposite plaintiffs' property on Park Street are zoned for residential use, except for a parcel on the corner formed by it and Ridgedale Avenue upon which there is erected an old dwelling, which is now used for office purposes. The witness described the floor areas of the various stores in the vicinity which vary in size between 900 feet and 6,100 feet approximately.
The witness pointed out that Sixth National Corp. has eight stores in one building with the following floor areas:

 1  936 sq. ft.
 3  1224 " "
 1  1368 " "
 1  1584 " "
 1  2520 " "
 1  6120 " "
 Total  16200 " "

He showed that because of the parking and buffer zone requirements, the plaintiffs can build on approximately only *148 12% of their land, although the ordinance permits a 20% land coverage.
Mr. Edwards testified that he did considerable research with respect to the parking ratio provision. He gave figures from various professional bulletins with respect to the parking needs of different types of business, and the average ratios in effect, and stated as his opinion that a ratio of 3 to 1 in the area in question would be reasonable and satisfactory. He said that a ratio of 6 to 1 was entirely too high for a supermarket use. He stated that some types of stores require much less than others, for instance, furniture stores, where the ratio would vary between 1 to 1, and 2 to 1.
He pointed out that the shopping center of the Sixth National Corp. has no buffer area but does have parking in the front and rear of the building. He estimated that the area available for parking is about 3 to 1. He gave it as his opinion that no lot in the B-2 area has a 6 to 1 parking ratio, with the result that all are nonconforming. He expressed the opinion that the parking provision is not at all realistic or practical but excessively high and unreasonable.
The plaintiff called as a witness Peter F. Pasbjerg, a mortgage banker and realtor of Newark, with considerable experience in leasing and managing shopping centers in New Jersey and Pennsylvania. He stated that the range of 1,500 feet minimum and 5,000 feet maximum for stores is neither practical nor economical. He stated that all supermarkets, even those under individual operation, are more than 5,000 square feet. He said that today the average floor area of supermarkets is about 20,000 square feet; that variety stores, including the five-and-ten-cent store type, require more than 5,000 square feet. He pointed out that in shopping centers having floor areas of 40,000 to 100,000 square feet, the majority of the individual stores are under 1,500 square feet. He mentioned that candy stores, barber shops, cleaning stores, shoe repairing shops, and the like, generally occupy less than 1,000 square feet.
*149 It appeared from the testimony of an officer of the plaintiff corporation that it planned a group of stores, including one of 12,800 square feet for a variety store, and another of 15,000 square feet for a supermarket, with a number of smaller ones to be used in the cleaning, drug, bakery, shoe and apparel businesses. He stated that because of the parking and buffer provisions only 12% of the lands in question will be available for building, although the permissive land coverage is 20%.
Donald J. Irving, a planning consultant called by the defendants, testified that his firm worked on the borough's master plan and the 1954 revision of the zoning ordinance; that he personally had done no work for the borough since 1955; that the borough is generally residential, with some industry and business; that there are two swamp areas in the borough; that the water table is high, and there is a considerable area of land which is subject to flooding; that the population in 1950 was about 2,100, and is now between 5,000 and 6,000. He expressed the opinion that a buffer area between business parking areas and residential districts is reasonable. He stated that a 5,000 square foot maximum ground floor limitation for stores is proper zoning because larger stores might cause traffic congestion. He stated that the idea behind the B-2 zone in the borough was to provide services to meet community-wide needs. The desire was to eliminate traffic from outside the borough, although it was conceded that such traffic could not be excluded. He testified that he could not say whether his firm had recommended the ordinance changes involved here, but added that it did not recommend the 6 to 1 parking ratio.
On cross-examination he was asked his opinion as to the provision for a minimum limitation of 1,500 square feet for stores. This was objected to by the borough's attorney as not within the scope of the direct examination, and the question was thereupon withdrawn.
The witness, when asked about the difference between a supermarket operating in one 15,000 square foot store and *150 in three stores each having 5,000 square feet, stated that he did not think the latter would be a practical operation. He said that one 20,000-foot store would generate more traffic than four 5,000-foot stores, but he could not substantiate his opinion.
Hugh R. Pomeroy, a planner of considerable experience, also testified for the defendants. He stated that the ordinance was designed for business to meet local needs, to maintain the residential character of the community, to minimize the impact of non-residential use and to limit traffic from outside the borough, although conceding that people cannot be kept out; this despite the fact that South Orange Avenue, a heavy traffic artery, runs through the B-2 district. He expressed the opinion that a buffer zone of the type provided in this ordinance does not violate the principle of uniformity; that the limit on the maximum size stores was reasonable, but admitted that no other ordinance in this State has such a provision, but he referred to a few communities in the nation having neighborhood zoning where there are maximum limitations on store areas. No such ordinance was produced and no precise figures on limitation were given. With respect to the minimum limitation, he volunteered that it was not good zoning and did not conform with the borough's stated aims. He admitted that the parking ratio was high, but still within reasonable limits. He said that in the large Macy-Bamberger Shopping Center in Bergen County, the parking ratio is only 2 to 1. He conceded also that 3 to 1 is an acceptable ratio for neighborhood stores, but that 6 to 1 was not unreasonable because of what might evolve in the future. He expressed the opinion that one 15,000 square foot store would generate more traffic than three 5,000-foot units, because of sales attraction and the heavier turnover of a large store. No traffic studies were given to prove this statement, it was merely his estimate. The witness stated that in his opinion, the regional composite was adequate for the borough; that it needed only neighborhood stores and its requirements beyond that could *151 be serviced by the adjoining communities, principally Chatham and Madison.
The trend in modern day zoning beyond the health, safety, and morals theory of earlier zoning is recognized in the following cases: Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509 (1949); Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952); Lionshead Lake, Inc. v. Township of Wayne, 10 N.J. 165 (1952); Fischer v. Township of Bedminster, 11 N.J. 194 (1952); Pierro v. Baxendale, 20 N.J. 17 (1955). However, the comment of Chief Justice Weintraub in Kozesnik v. Montgomery Township, 24 N.J. 154, 169 (1957), where he was discussing Pierro v. Baxendale, supra, and Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955), which cases were said to be in conflict and to have created doubt as to what was the prevailing view of the Supreme Court, is apropos here: "In both cases this court divided 4 to 3, but the division did not reflect disagreement as to basic principle, but rather as to the application of the principle to the facts of the case." That statement points up the situation in the instant case.
It is recognized that certain uses may be excluded from a community by a zoning ordinance, as in Duffcon Concrete Products v. Borough of Cresskill, supra, where heavy industry was prohibited, and in Fanale v. Borough of Hasbrouck Heights, 26 N.J. 320 (1958), where apartment houses were banned.
It is important to note that the ordinance in this case provides for a business zone which is broad enough to include a shopping center; and a building containing a number of stores is not excluded. There is no limitation upon the ground floor area of a building, provided it does not cover more than 20% of the land. The plaintiffs have no desire to erect buildings beyond that limitation. What the plaintiffs challenge here are the minimum and maximum limitations put on the ground floor area of individual stores *152 within a conforming building. This, in effect, is an attempt to control the location of partitions within such a building.
As regards the off-street parking requirement, the plaintiffs do not question the right of the ordinance per se to require off-street parking in connection with store operations, but they do contend that the ratio 6 to 1 is unreasonable and arbitrary.
As to the buffer zone, the challenge appears to be with respect to the depth of it, namely, 50 feet rather than to a buffer zone in general.
The defendants attempted no real defense of the minimum floor area provision of the ordinance, though they did not concede its invalidity. However, one of their own experts said it was unreasonable and poor zoning; they objected to an expression of opinion by their other expert with respect to it.
The parking provision is far out of line when compared with the average parking ratios as fixed by ordinance elsewhere, and as seen in practice in shopping centers elsewhere including that of the defendant Sixth National Corp., and it can hardly be said to have had the full support of the planning experts called by the defendants. And we have here the fact that the parking ratio set at 2 to 1 in the revised ordinance of 1954 was changed to 4 to 1 on February 5, 1957, and to 6 to 1 on October 21, 1958. This is very drastic change in regulation within a short period of time.
We cannot find any case in this State or elsewhere supporting minimum or maximum limitations on ground floor area of a store, nor were we cited to any ordinance within this State containing such a provision. As was stated above, there was some testimony of Mr. Pomeroy as to ordinance limitations elsewhere as to maximum area, but it was vague and general.
It is well recognized that zoning ordinances are not immutable, they may be amended from time to time, but there should be some change in circumstances justifying *153 it or some showing that experience has proved that the earlier provision was made in error. A landowner has no vested right in district classifications, though one of the essential purposes of zoning regulations is the stabilization of property uses. Rockhill v. Chesterfield Twp., 23 N.J. 117, 129 (1957); Kozesnik v. Montgomery Twp., 24 N.J. 154, 167 (1957).
The law recognizes no vested right such as the defendant Sixth National Corp. claims in its answer. Its intervention in this case, the character of its defense, and the claims which it makes to vested rights, indicate rather strongly that it desires to keep out of the borough any type of business which might adversely affect it through competition offered to its tenants. There is no proof here of any improper motivation in the enactment of the amendments under discussion. However, there is clearly present in the atmosphere of the case the idea that Sixth National Corp. desires to limit such competition.
There is a fairly debatable question with respect to the reasonableness of the buffer provision in the ordinance, and that being so, the presumption of its validity will stand. However, the other challenged provisions are clearly unreasonable, arbitrary and not designed to further the objectives of zoning, as expressed in R.S. 40:55-32. There is in the ordinance as amended a lack of the uniformity within the same district which is required by R.S. 40:55-31.
Accordingly judgment may be entered declaring sections 7.1 B(a) and 9.5.1(g) of the zoning ordinance invalid.