**STATE of Maine**

**v.**

**Robert W. RUSH.**

Supreme Judicial Court of Maine.

Aug. 27, 1974.

Peter G. Ballou, Asst. County Atty., Elizabeth L. Boynton (Law Student), Hugh Calkins, (amicus curiae, City of Portland), Cumberland Legal Aid Clinic (amicus curiae), Portland, for plaintiff.

Robert W. Rush, pro se.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

The Defendant admittedly violated an ordinance of the City of Portland by leaving his automobile parked on a public way in excess of the time limit, between the hours of 2:00 a. m. and 6:00 a. m.[1] The vehicle was "ticketed". Eschewing a waiver provision contained on the ticket by which he could have avoided court action by payment of a waiver fee, the Defendant, appearing pro se, was heard before the Superior Court without a jury, on appeal from District Court. From a guilty finding, the Defendant appeals. We deny the appeal.

The Appellant's argument, both at trial and on appeal, is directed at the constitutionality of the parking ordinance. The Defendant contends that the ordinance involves an unreasonable exercise of the police power, and that by reason of other actions of the City of Portland, the ordinance in question discriminates against low-income people living in high-density areas within the City of Portland in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

In support of this contention, the Defendant offered, without objection, testimony and documentary evidence consisting essentially of statistical data. The trial Justice treated the arguments as constituting a motion for judgment of acquittal under the provisions of M.R.Crim.P., Rule 29.

I.

Factual Findings of the Trial Court

The trial Court made ten separate but specific findings of fact. The factual findings numbered one through eight were proper evidentiary deductions within the fact-finding discretion of the trial Court. In factual finding number nine, the trial Justice took judicial notice of the *"necessity for people to own and operate automobiles in order to provide transportation for themselves and their families."* Since due process and equal protection claims require a weighted balancing of public interest and individual burdens, we examine closely the trial Justice's elevation of the use of automobiles to that of a necessity. To be a proper subject of judicial notice, a fact must be a matter of common knowledge, which is generally accepted without qualification or contention. Public Utilities Commission v. Cole's Express, 153 Me. 487, 493–494, 138 A.2d 466, 469–470 (1959). The modern trend has enlarged the concept to include matters which are of such verifiable certainty that they may be confirmed by reference to sources of indisputable accuracy. State ex rel. Kornmman v. Larson, 81 S.D. 540, 138 N.W.2d 1 (1965); Rogstad v. Rogstad, 74 Wash.2d 736, 446 P.2d 340 (1968); McCormick, Evidence § 325. Although eco-

---

1. City of Portland, Me., Municipal Ordinances § 711.13: "That no person shall park a vehicle on any street for a period of time longer than 30 minutes between the hours of 2:00 a. m. and 6:00 a. m. of any day except physicians or other persons on bona fide emergency calls."

nomic and financial conditions may be proper subjects of judicial notice,[2] such notice is still restricted by the requirements of uncontested common knowledge or verifiable certainty.

■ Contemplating the variety of evidentiary factors involved and the absence of evidentiary material as to the particular needs in this case, the trial Court's notice that ownership and operation of automobiles is necessary for personal and family transportation is not supportable under the above-cited standard.

The tenth factual finding includes the conclusion that the *"City of Portland has by its policy with regard to off-street parking made it impossible for large numbers of its residents to comply with § 711.13"* (the overnight parking ordinance). The *policy* to which the Justice referred consists of the combined effect of the municipal zoning ordinance establishing off-street parking requirements and the occasional granting of variances for cause by the Zoning Board of Appeals. In the Defendant's R–5 Residential Zone, the required parking space is determined by the size of the developed lot and not by the number of dwelling units upon the lot. The Westside area, (within R–5 Residential Zone) in which the Defendant lives, has fewer off-street parking spaces than dwelling units.

■■ The constitutionality of the overnight ban is not dependent on the zoning ordinance requiring off-street parking spaces. The City is under no constitutional obligation to zone sufficient space for the parking of automobiles which are prohibited from parking on the streets overnight. While the propriety of a particular exercise of the police power will be considered in view of existing circumstances, the municipality bears no affirmative obligation to require remedial action to lessen the individual burdens imposed by a proper exercise of the police power. The fact that the Portland zoning ordinance did not require parking spaces sufficient to provide for all residents' automobiles or that variances had occasionally been granted[3] did not of itself make *"it impossible for large numbers of residents to comply with § 711.13. . . ."* To establish as true that compliance was *impossible* (proof of which was not attempted by any means other than by the number of violations), consideration must be given to the available and applied resources of the private sector of the economy and the legitimate need for private transportation in this district. This finding is unsupported by the facts and presupposes a legal obligation on the part of the City to order by law, parking spaces to replace those formerly used on public streets.

Defendant does not dispute the authority of the city to exercise its police power in zoning for off-street parking,[4] but rather asserts that the public protection gained

---

2. Judicial notice has been taken of such economic facts as a world-wide financial crisis, Arnold v. Arnold, 332 Ill.App. 586, 76 N.E.2d 335 (1947); a stock market collapse, Great Northern R. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936); a general economic depression, Atchison, T. & S. F. R. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932); adverse business and financial conditions, Young v. Phillips, 170 Tenn. 169, 93 S.W.2d 634 (1936); and widespread unemployment, Jennings v. St. Louis, 332 Mo. 173, 58 S.W. 2d 979 (1933).

3. Appellant argues that the granting of twenty-seven variances and sixty-three density increases over a fifty-month period

exacerbated the compliance problem. The exceptions do not appear excessive as city-wide figures over a relatively long period of time. Furthermore, the Appellant has not shown the proportion of these exceptions in the peninsula area of the City around which his argument revolves.

4. Zoning for mandatory off-street parking has been a common practice in recent years in this country and has been the subject of numerous challenges by land owners as a taking of property in violation of their due process rights under the Fourteenth Amendment. Although these ordinances have been generally upheld as a proper exercise of the police power, there is conflict among the authorities. *Compare* State ex rel. Kil-

thereby is not equally available to all resident tenants in the City.

◼ The present action is not a proper challenge to the constitutionality of the zoning ordinance, but instead is an appeal from a conviction for a parking violation on the grounds that the ordinance under which the Defendant was convicted is unconstitutional. The parking ordinance is either valid or invalid. That determination is independent of whether a separate ordinance which ameliorates the burden of the parking prohibition does so in a manner which is equally protective to all persons similarly situated. If a prohibition on overnight parking is a proper exercise of the municipal police power, it may be ordered without any coordinate zoning ordinance requiring off-street parking spaces.

An otherwise valid parking ordinance can not be made invalid by the existence of a supplementary companion ordinance which, though arguably arbitrary in nature, has the incidental effect of lessening, for some persons, the burden of finding alternative overnight parking locations.

leen Realty Co. v. City of East Cleveland, 108 Ohio App. 99, 153 N.E.2d 177, 186–187 (1958), aff'd 169 Ohio St. 375, 160 N.E.2d 1 (1959), *with* City and County of Denver v. Denver Buick, 141 Colo. 121, 347 P.2d 919 (1959). There are cases, however, which hold particular off-street parking requirements invalid on the basis of their special arbitrariness. These cases proceed on the presumption that off-street parking ordinances are generally valid. *See, e. g.,* Ronda Realty Corp. v. Lawton, 414 Ill. 313, 111 N.E.2d 310 (1953) (requirement of off-street parking for apartment houses and not for other multiple use buildings was held discriminatory); Ridgeview Co. v. Board of Adjustment of Florham Park, 57 N.J.Super. 142, 154 A.2d 23 (1959) (zoning ordinance requiring six square feet of parking area for each one square foot of gross floor area used for business, commercial or personal service establishments and retail stores in business zone was arbitrary, unreasonable and not designed to further the proper purposes of zoning).

## II.

### Due Process

Pursuant to legislative authorization,[5] the City of Portland enacted Municipal Ordinance § 711.13. It is clear from the words of the enabling legislation that the City had, within its delegated authority, the power to establish parking regulations. Our only concern is whether the specific regulation in question was a constitutionally proper exercise of its police power.

Although variously expressed, it is established that the requirements of due process exact that the law shall not be unreasonable, arbitrary, or capricious and that the state's police power can be properly exercised only when there is a reasonable relationship to the public health, safety, morals, or welfare. West Coast Hotel v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Nebbia v. People, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

◼ The requirements of due process in the exercise of the police power may be

5. The Legislature has delegated to the municipalities the power to enact ordinances to provide for the public health and safety, and specifically to regulate vehicular traffic on public ways. 30 M.R.S.A. § 2151 provides in pertinent part:
"A municipality may enact police power ordinances for the following purposes:
1.A. Promoting the general welfare; preventing disease and promoting health; providing for the public safety.
   \*    \*    \*    \*    \*
2.A. Providing for the protection and maintenance of public ways and other public property.
   \*    \*    \*    \*    \*
3.A. Regulating the operation of all vehicles in the public ways and on publicly owned property; providing the fact that a vehicle is unlawfully parked shall be prima facie evidence of the unlawful parking of such vehicle by the person in whose name such vehicle is registered."

analytically separated into three component elements:

1. The *object* of the exercise must be to provide for the public welfare.

2. The legislative *means* employed must be appropriate to the achievement of the ends sought.

3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

Together these elements constitute a standard for determining the reasonableness of the scope and exercise of the state police power.

We examine the subject ordinance under this due process standard, bearing in mind that there is a presumption favoring the constitutionality of state laws; and in determining the validity of municipal ordinances, their reasonableness will be presumed. Donahue v. City of Portland, 137 Me. 83, 85, 15 A.2d 287, 288 (1940).

■ The burden is on the party challenging the ordinance to establish the complete absence of any state of facts which would support the need for the laws enacted by the municipality. It is not necessary for the State to demonstrate to us that the actual evils persist. Olsen v. Nebraska ex rel. Western Ref. Bond Ass'n, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1940). The courts must restrict their inquiry to the issue of whether any state of facts either known or which reasonably could be assumed affords support for the legislative judgment. *See* United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

In its amicus curiae brief to this Court, the City of Portland suggests several legitimate purposes of the subject ordinance. These purposes include:

1. Facilitating street repairs and cleaning;

2. Increasing access for fire companies to property abutting streets;

3. Improving visibility for nighttime police observation of property abutting streets so as to detect unlawful entries;

4. Removing hiding places for persons who have violated the law;

5. Lessening likelihood of automobile larcenies;

6. Facilitating snow removal from public streets.

Similar municipal purposes have been found to be a proper subject for the exercise of the police power in other communities which have adopted all-night parking bans. DePace v. Mayor and Council of Wilmington, 5 Terry 319, 44 Del. 319, 58 A.2d 742 (Super.Ct.1948), aff'd 6 Terry 300, 45 Del. 300, 72 A.2d 439 (1950); Commonwealth v. Dobbins, 344 Mass. 272, 182 N.E.2d 123 (1962).

■ The institution of an all-night parking ban on public streets was not inappropriate to the achievement of the legitimate traffic and safety objectives of the municipality. We have stated that,

"[t]he ultimate test of reasonableness is whether the regulatory means adopted by a municipality bears any rational relationship to the evil to be corrected." Buck v. Kilgore, Me., 298 A.2d 107, 110 1972).

The Appellant suggests that the same public purposes could have been satisfied by less restrictive regulations on the part of the City. Recently, the Supreme Court has made clear that,

"[o]nly where state action impinges on the exercise of fundamental constitutional rights or liberties must it be found to have chosen the least restrictive alternative." San Antonio Independent School

District v. Rodriguez, 411 U.S. 1, 51, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16, 53 (1973).

The only interest of the Appellant impinged by the subject ordinance is that of

parking his automobile on a public street. Such an interest does not find expressed or implied protection within the Constitution and is not contained within any broader constitutional guarantees. Consequently, the municipal ordinance need only satisfy the test of substantial relationship to the ends sought, and not necessarily constitute the least restrictive means to the achievement of those ends.[6]

The Appellant, who has the burden of establishing the unconstitutionality of the ordinance, has not shown that it lacks a substantial relationship to the avowed purposes of public health and safety. We have stated:

> "The presumption of constitutionality is not absolute, but must give way if 'clear and irrefragable' evidence establishes the lack of a rational relationship between the evil sought to be prevented and the method adopted to do so." Ace Tire Co., Inc. v. Municipal Officers of Waterville, Me., 302 A.2d 90, 101 (1973).

The record before us is lacking any evidence to indicate that the minimal requirements of rationality have not been met.

The Appellant has presented evidence showing that the area in which he resides has fewer off-street parking spaces than dwelling units. The presence of a parking problem does not, however, supersede or obviate coordinate health and safety needs toward which the City may exercise its police powers. This Court does not attempt to balance the severity of these problems or suggest their resolution. The parking prohibition is reasonably related to a problem of public health and safety, and its general application does not work unreasonable hardships in light of the City's le-

gitimate interests and the appropriate means employed in furtherance of them. Cf. State v. Small, 126 Me. 235, 137 A. 398 (1927).

The police power has previously been used in this State to restrict certain uses of private automobiles, and such restrictions have imposed personal hardships greater than those in the present case. In State v. Mayo, 106 Me. 62, 75 A. 295 (1909), this Court upheld an ordinance closing certain public streets to the use of automobiles as a proper exercise of the legislatively-delegated police power.

> "[T]he right to so use the public streets . . . is not an absolute and unqualified right. It is subject to be limited and controlled by the sovereign authority —the State, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people. . . .
>
> That reasonable regulations for the safety of the people while using public streets are clearly within this police power of the State is too plain to admit of discussion." Mayo, supra at 66–67, 75 A. at 297.

Similarly, in State v. Phillips, 107 Me. 249, 78 A. 283 (1910), this Court affirmed the criminal conviction of a defendant who violated a legislative act prohibiting the use of automobiles on any public way in Eden, Mount Desert, and Tremont. The Defendant challenged the law as unconstitutional, inasmuch as it was impossible under the law for a resident of Southwest Harbor, which did not have such a prohibition, to leave that town and the island of Mount Desert without passing through a portion of the towns of Eden and Mount Desert. Yielding to legislative judgment,

---

6. The relative importance of automobile ownership would have no bearing on determining whether it was a "fundamental interest" re-requiring a differing standard for testing the constitutionality of statutes or ordinances affecting that interest. The identification of "fundamental interests" is dependent upon whether such a right is explicitly or implicitly guaranteed by the Constitution and not upon the societal significance of the interest. San Antonio Independent School District v. Rodriguez, supra, at 411 U.S. 33, 93 S.Ct. 1297, 36 L.Ed.2d 43.

the Court found the act to be reasonable and expedient. This Court has previously allowed municipalities wide scope in the exercise of their delegated police powers for the purposes of regulating various types of traffic on public streets. Central Cab Co. v. City of Portland, 137 Me. 169, 16 A.2d 129 (1940); Chapman v. City of Portland, 131 Me. 242, 160 A. 913 (1932); State v. Barbelais, 101 Me. 512, 64 A. 881 (1906).

■ Municipalities, which have the responsibility for the construction and maintenance of streets, have the power to prevent their destruction or deterioration. State v. Boardman, 93 Me. 73, 44 A. 118 (1899). They also have the authority to properly maintain the streets, assure the safety of their use, and prevent their use from interfering with other legitimate exercises of municipal government. If municipalities have the power to totally prohibit automobile traffic on public streets, as we have ruled they do in appropriate circumstances, they surely have the authority to enforce a lesser restriction on vehicular traffic by prohibiting on-street parking during certain hours where a legitimate public purpose is served by such a law.

■ In determining whether regulatory means selected by law-making bodies are reasonably calculated to meet the objectives of the law, we recognize that the substantive demands of due process require that the means employed must not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated.

In Ferguson v. Skrupa, 372 U.S. 726, 729–730, 83 S.Ct. 1028, 1030–1031, 10 L.Ed. 2d 93, 96–97 (1963), the Supreme Court, through Mr. Justice Black, stated that while

"[t]here was a time when the Due Process Clause was used by the Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy . . . [t]he doctrine . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws . . . . 'We are not concerned . . . with the wisdom, need, or appropriateness of the legislation.' "

Speaking specifically in reference to the authority of states to exercise authority over their highways, the Court, through Mr. Chief Justice Hughes, stated in Sproles v. Binford, 286 U.S. 374, 388–389, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932):

"When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome."

■ The courts exercise equal restraint when reviewing the reasonableness of municipal ordinances and will not interfere with the discretionary powers of localities except in extraordinary cases to restrain gross abuses. Lewiston v. Grant, 120 Me. 194, 113 A. 181 (1921).

Ordinances and regulations prohibiting all-night parking have been considered and upheld in other jurisdictions as a proper exercise of the properly-delegated police power. DePace v. Mayor and Council of Wilmington, *supra*; Commonwealth v. Berney, 353 Mass. 571, 233 N.E.2d 739 (1968); Commonwealth v. Dobbins, *supra;* State v. Perry, 269 Minn. 204, 130 N. W.2d 343 (1964); City of Milwaukee v. Hoffmann, 29 Wis.2d 193, 138 N.W.2d 223 (1965).

We have reviewed the factual presentations and findings of the case before us, and find nothing in those facts to prove the unreasonableness of the ordinance. Furthermore, we find nothing in the evidence to suggest that the ordinance was implemented in an arbitrary or capricious manner.

### III.

### Equal Protection

The Appellant further asserts that *"the existing system tends to discriminate against low-income residents of the high-density neighborhoods of the city,"* thereby violating the Equal Protection Clause of the Fourteenth Amendment. The nature of the Appellant's argument and proof is that the neutral enforcement of an ordinance neutral on its face serves to place the burden of compliance (or the penalties of disobedience) disproportionately on a particular segment of the population.

Much of the Appellant's equal protection argument is buttressed by his claim that the separate zoning ordinance, establishing variable requirements for off-street parking, contributes to the discriminatory treatment of residents in his district. As we have earlier stated, the argument is inappropriate to this appeal.

The fact that a municipal parking ordinance works a greater disadvantage on certain individuals than on others does not invalidate the law as violating the Equal Protection Clause. This Court observed in Von Tiling v. City of Portland, Me., 268 A.2d 888, 892–893 (1970):

"It is inescapable that many municipal ordinances disadvantage some individuals. It cannot be expected that a municipal ordinance will affect all persons with exact equality. An ordinance forbidding parking of vehicles in certain areas necessarily makes access to those areas more difficult for the aged and infirm than for the youthful and vigorous.

. . . If the legislation is reasonably suited to serve a proper purpose a court will not nullify it because it works hardship and disadvantage in individual cases. An ordinance is not invalid as violating the equal protection clause if within the spirit of its operation it affects alike all persons similarly situated."

The ban on overnight parking applies to all city streets, and we have been presented with no evidence suggesting a more zealous enforcement effort in the Defendant's neighborhood than in other areas of the city. Any resulting pattern of violations is the incidental consequence of a city ordinance reasonably suited to serve a permissible municipal purpose.

If the city-wide prohibition on overnight parking results in a disproportion in the number of violations among residents who reside in different districts, we cannot say that such disparities are the product of a system that is so irrational as to be invidiously discriminatory. *Cf.* San Antonio Independent School District v. Rodriguez, *supra*, 411 U.S. at 54–55, 93 S.Ct. at 1308, 36 L.Ed.2d at 55.

Chief Justice Warren, speaking for the Supreme Court in McGowan v. State of Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), stated:

"[T]he Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."

The Portland prohibition on overnight parking does not discriminate against any specific definable category of low-income

persons, nor does it discriminate in general against those relatively poorer than others. If there is a resulting pattern of discrimination discernable from the Defendant's evidence, it is against all those persons who, irrespective of their personal incomes, happen to reside in residential districts of high-density population and low annual mean income.

■ A claim of *"district discrimination"* does not fall within the realm of Fourteenth Amendment protection. In McGowan v. State of Maryland, *supra*, the Defendants contended that statutory exemptions to the Sunday Closing Laws granted only to retailers in one county discriminated unreasonably against retailers in other Maryland counties. The Court responded:

> "[W]e have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite." *McGowan, supra,* 366 U.S. at 427, 81 S.Ct. at 1106, 6 L.Ed.2d at 400.

The alleged discrimination in the present case involves no suspect classifications such as race, Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); national origin, Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L. Ed. 249 (1948); or alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The alleged discrimination is based on residence in a geographical district not on inherent personal attributes. To the extent that there is a resulting pattern of violations correlated to the relative wealth of individual violators, such categorization does not concern a constitutionally suspect class.

■ Comparative wealth is not among those suspect criteria which require the use of strict judicial scrutiny in reviewing state classification schemes.[7] San Antonio Independent School District v. Rodriguez, *supra*.

■ The Portland parking ordinance is not the product of purposeful discrimination against any group or class. It impinges upon no substantive constitutional rights or liberties, and is not wholly irrelevant to the achievement of legitimate municipal objectives. As such it satisfies the demands of the Constitution and is not violative of the Defendant's right not to be denied equal protection of the laws of this State.

This Court is under no obligation, and takes no opportunity, to endorse or criticize the value of specific legislative enactments. We are constrained to examine challenged laws only as to their constitutional validity. The political process and the deliberations of elected representatives are better suited to contend with the complex questions of public policy and competing social interests. We find nothing in the subject ordinance or its enforcement which invades the constitutional rights of

---

7. Where the strict scrutiny test is mandated, the usual presumption of statutory validity is abandoned and the State carries the burden of showing a compelling state interest for the classification scheme. Furthermore, the State must demonstrate that it has selected the least restrictive means for achieving its objectives. *See* Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

Functional indigency, as compared to comparative wealth, has been a classification requiring the more stringent test of judicial review, especially where related to the availability of certain government processes or important personal rights. *See, e. g.*, Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (invalidated Texas filing fee requirement for primary elections); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed. 2d 130 (1971) (declared unconstitutional criminal penalties that subjected indigents to incarceration because of their inability to pay a fine); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (required State to provide indigent criminal appellant with trial transcript or other means of affording adequate and effective appellate review).

the Defendant or exceeds the constitutional authority reposed within the Legislature and statutorily delegated to the municipality.

The entry must be,

Appeal denied.