Richard GABRIEL

v.

TOWN OF OLD ORCHARD BEACH, Maine and Richard P. Marshall, Leslie E. Wyman, Timothy Tucker, William Murphy, Joseph Mokarzel and Richard Lumb, Chief of Police.

Supreme Judicial Court of Maine.

Aug. 21, 1978.

Reef & Mooers by Daniel W. Mooers (orally), Norman S. Reef, Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson by F. Paul Frinsko, Portland (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

This case is on report on an agreed statement of facts pursuant to Rule 72(b), M.R. Civ.P. The question of law presented is whether an Old Orchard Beach ordinance entitled "Ordinance Controlling Nudity in Licensed Businesses"[1] is a valid exercise of that town's police power under the Maine and United States Constitutions.

The agreed statement of facts provides in part as follows. Richard Gabriel is the owner of "The Bikini Tavern" which is located in the Town of Old Orchard Beach (hereinafter "the Town"). The plaintiff is licensed to do business in accordance with the licensing ordinance of the Town and the individual defendants are charged by law with the enforcement and administration of the ordinance of the Town.

The plaintiff's business consists of the sale of malt liquor at tables, booths and counters, with service provided by so-called "topless" (unclothed from the waist up) waitresses. The plaintiff has employed "topless" waitresses at his tavern since May of 1975, which is located in a primarily commercial neighborhood. Minors are denied entry to the tavern, and it is not possible to view the interior of the tavern from outside.

At a special meeting of the Old Orchard Beach Town Council on October 28, 1976, it was voted to submit to the voters, in an advisory referendum on December 13, 1976, the question of whether the Town should enact some ordinance regulating nudity in licensed businesses. At a subsequent meeting of the town council, it was voted that the "Ordinance Controlling Nudity in Licensed Businesses" be adopted in its entirety and that it take effect immediately upon the acceptance of the referendum by the voters on December 13, 1976. On December 13, 1976, a majority of the voters approved the referendum question.

I

The plaintiff first attacks the ordinance on procedural grounds. It is argued that the referendum ballot failed to inform the voters of what they were actually voting on, and further, the referendum procedure failed to comply with the requirements of the Town Charter.

We find no merit to these claims.

The legislature has granted the various municipalities authority to enact police power ordinances in order to promote the general health, welfare and safety of the community. 30 M.R.S.A. § 2151. In addition, 30 M.R.S.A. § 2153 sets forth an enactment procedure by which a municipality may enact ordinances. This enactment procedure, however, does not apply to ordinances which may be enacted by municipal officers. 30 M.R.S.A. § 2153(4). In the instant case, the Town Charter grants broad powers to its council. The Charter provides in part as follows:

"Sec. 12. *Council; Corporate Powers.* The Town, after acceptance of the Charter, shall continue to have the capacity to act through and to be bound by its Town Council, who shall when convened from time to time, as herein provided, exercise exclusively, so far as will conform to the provisions of this charter, all powers vested in the municipal corporation. Action in conformity with all provisions of law now or hereafter applicable to the transaction of town affairs in town meeting shall, when taken by any town council in accordance with the provisions of this charter, have the same force and effect

1. See Appendix A.

as if such action had been taken in a town meeting open to all voters of the town as organized and conducted before the establishment of manager-town council government."

■ This section of the charter grants authority to the Town Council to enact ordinances without submitting the subject matter of the proposed ordinance to a public referendum. Therefore, the so-called "Advisory Referendum" held on December 13, 1976, was just that—advisory. Since the referendum was not mandated by either statute or charter, any procedural attack on the validity of the ordinance based on deficiencies in the referendum process must fail.

## II

The plaintiff's substantive attack on the ordinance is threefold.

### II–A

It is first alleged that the ordinance is facially overbroad in that it prohibits activity protected by the First Amendment. The plaintiff does not contend that the activity he is engaged in (operation of a tavern featuring "topless waitresses") is protected by the First Amendment but, rather, that the ordinance on its face prohibits constitutionally protected forms of expression.

The defendants maintain that the plaintiff lacks standing to raise the issue of facial overbreadth.

In *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973), the United States Supreme Court noted that one of

"the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others."

The Court in *Broadrick* went on, however, to point out that an exception to this traditional rule has been "carved out in the area of the First Amendment" and concluded:

"Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

413 U.S. at 612, 93 S.Ct. at 2916. As was pointed out in *Broadrick*,

"facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct . . . ."

*Id.* at 612–13, 93 S.Ct. at 2916.

More recently, in a case involving a challenge by three corporations to an ordinance proscribing topless dancing of the type which the corporations had provided as entertainment in their bars, the United States Supreme Court held that the corporations had standing to challenge the overbreadth of the ordinance on the ground that the ordinance prohibited any female from appearing in "any public place" with uncovered breasts. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In *Doran* the Court concluded that the District Court did not abuse its discretion in granting the injunctive relief sought by two of the corporations. Although it regarded the question as a "close one," the Court was careful to intimate no view as to the ultimate merits of the corporations' contentions.

■ We hold that the plaintiff has standing to raise the issue of facial overbreadth.

■ Our next task is to determine whether the challenged ordinance is facially overbroad and therefore invalid. The test by which we must make this determination has been set out as follows:

"[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2918. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). *See generally*, Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970). We construe this test to require a balancing of interests. On the one hand we must weigh the constitutionally protected First Amendment interest infringed upon, juxtaposed against the governmental interest served by the ordinance.

First, it must be determined what First Amendment interests are infringed upon by the ordinance. The plaintiff suggests that "topless" barroom dancing, which is prohibited by the ordinance, is entitled to First Amendment protection. The United States Supreme Court has held that "the customary 'barroom' type of nude dancing *may involve* only the barest minimum of protected expression." (emphasis supplied) *Doran*, 422 U.S. at 932, 95 S.Ct. at 2568. *See California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). We therefore *assume* for our purposes that "topless" barroom dancing may be a form of protected expression under the First Amendment.

The plaintiff also suggests that a theatrical production such as "Hair," if performed in a coffee house or dinner theater, would be proscribed by the ordinance. A literal reading of Article II, § 2.1 of the ordinance, which defines a "theater" as having a permanent stage and permanently affixed seats, apparently supports the plaintiff's position. We read the ordinance more broadly, however. Article IV, § 4.1 provides that the ordinance does not apply to "a theater or *similar establishment.*" (emphasis supplied) Since it was the obvious intent of the drafters of the ordinance *not to prohibit* legitimate forms of expression in a theatrical context, we construe "similar establishment[s]" as being broad enough to include coffee houses or dinner theaters. As the Court recognized in *Schacht v. United States*, 398 U.S. 58, 61, 90 S.Ct. 1555, 1558, 24 L.Ed.2d 44 (1970), "theatrical productions need not always be performed in buildings or even on a defined area [such] as a conventional stage." Nor is it a requirement in our view that an audience must sit in "permanently affixed seats" in order to view a theatrical production.

■ What is the nature of the governmental interest served by the ordinance? In construing ordinances, this Court seeks the purpose of the enactors as it may have been objectively manifested. *Natale v. Kennebunkport Board of Zoning Appeals*, Me., 363 A.2d 1372, 1374 (1976). Article I of the Old Orchard Beach ordinance states that the purpose of the ordinance is twofold: (1) to regulate nudity as a form of commercial exploitation and (2) to regulate dress as a form of conduct. *See* Appendix A. It is further stated that the enacting authority finds the conduct regulated to be offensive to the general welfare, safety, order and morals of the town.

It is clear from looking at the ordinance in its entirety that the primary objective of the ordinance is to regulate conduct deemed to be injurious to the public morals and welfare. As Justice Douglas observed some years ago:

> "The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."

*Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). *See Wright v. Michaud*, 160 Me. 164, 173, 200 A.2d 543, 548 (1964).

■ The defendants argue that "unlimited commercial exploitation of nudity creates a tawdry atmosphere which adversely affects the quality of life sustainable by a town." The United States Supreme Court has held that a "city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976). Furthermore, we take judicial notice of the fact that the

commercial district of Old Orchard Beach is largely oriented toward its tourist industry. We believe that when aesthetic considerations are linked to the preservation and future development of a commercial environment conducive to a town's tourist industry, such as in the instant case, a significant governmental interest is served. *John Donnelly & Sons v. Mallar*, 453 F.Supp. 1272 (D.Me.1978). Accordingly, we hold that the Town's interest in attempting to preserve the quality of its urban environment outweighs any minimally protected First Amendment interest in nude dancing which may be infringed upon by this ordinance. *Cf. City of Portland v. Derrington*, 253 Or. 289, 451 P.2d 111 (1969). The ordinance is not facially overbroad.

In reaching this conclusion we are aware that other commentators have suggested guidelines for overbreadth scrutiny which do not involve a balancing of interest. For instance, the following guidelines have been suggested:

"(1) [A] law ought not to be struck down for overbreadth unless it lends itself to a substantial number of impermissible applications.

(2) [T]he area affected by a challenged law must substantially involve First Amendment interests.

(3) . . . [one should consider] the availability of judicial techniques for excising speedily and effectively the potential bad applications of an overbroad law." .,

Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 858–65 (1970). Even if we were to apply these guidelines, we would reach the same result regarding the overbreadth of the Orchard Beach ordinance. We find the following observation applicable in the instant case:

"If a court were to strike down a narrowly focused law for the sake of dissipating its minimal chilling effect, the holding would effectively foreclose the field to legislation."

Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 859 (1970).

## II–B

The plaintiff next argues that the ordinance violates the due process guarantees of the Fourteenth Amendment and Article I, Section 6–A of the Maine Constitution. It is argued that none of the municipal interests which typically support an exercise of the police power are present in this case.

We held in *State v. Rush*, Me., 324 A.2d 748, 752 (1974), "that the requirements of due process exact that the law shall not be unreasonable, arbitrary, or capricious." In *Rush* the requirements of due process in the exercise of police power were broken down as follows:

"1. The object of the exercise must be to provide for the public welfare.

2. The legislative means employed must be appropriate to the achievement of the ends sought.

3. The manner of exercising the power must not be unduly arbitrary or capricious."

*Id.* at 753. We examine the instant ordinance in light of the due process standard set out above, bearing in mind that there is a presumption favoring the validity of municipal ordinances. *Inhabitants, Town of Boothbay v. National Advertising Company*, Me., 347 A.2d 419, 422 (1975); *Rush, supra* at 753; *Buck v. Kilgore*, Me., 298 A.2d 107, 109 (1972).

The defendants admit in their brief that the primary objective of the ordinance "is the minimization of commercial exploitation of nudity, a goal which directly protects public morals and welfare." The plaintiff argues that the "commonly accepted availability of similar displays [of nudity] in widely distributed films, and magazines, effectively undercuts any claim made by the Town that the ordinance promotes general welfare and public morality by preventing degradation of the public environment."

It is agreed that within the Town there are displays of nudity in commercial establishments which are exempt from the proscriptions of the ordinance. This fact, however, does not preclude the

defendants from claiming that displays of nudity in certain licensed businesses tend to create a "tawdry atmosphere" which adversely affects the local quality of life. Nor is it necessary for the Town to demonstrate that the unregulated commercial exploitation of nudity will have an inimical effect on the general welfare and morals of the community. Rather, the burden is on the plaintiff to establish the complete absence of any state of facts which would support the need for the ordinance enacted by the municipality. *Rush, supra* at 753; cf. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). This burden is not met by the mere stipulation that the plaintiff's business has never occasioned any incident requiring police intervention. The stated purpose of the ordinance, to protect the "general welfare, public safety, order and morals" of the Town, meets the first test delineated in *Rush.*

█ The prohibition of nudity in certain licensed businesses was not inappropriate to the achievement of the end sought. It was reasonable for the Town Council to conclude that the proliferation of commercial establishments which exploit displays of nudity to attract customers would eventually lead to a commercial atmosphere not in keeping with the best interests of the community. Further, as will be pointed out in greater detail *infra*, the Town's exercise of its police power was not arbitrary or capricious because it prohibited displays of nudity in some businesses and not in others.

### II–C

The plaintiff's final attack on the ordinance is based on the argument that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment and Maine Constitution, Article I, Section 6–A. It is argued that there is no rational distinction to be made between a tavern and a theater or other exempt business insofar as they feature "topless" employees.

█ At the outset we must determine the appropriate standard of review for this equal protection challenge. As we pointed out in *State of Maine v. National Advertis-*

*ing Co.*, Me., 387 A.2d 745 (June 6, 1978), in cases involving a "fundamental" interest and/or a "suspect" classification, the traditional "rational basis" standard of review is abandoned in favor of a "strict scrutiny" test.

Facing an equal protection challenge to an ordinance which prohibited topless dancing in every "cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead," it was held "that the modicum of expression involved in topless dancing, puts this case into the other, 'tier' of equal protection, where 'strict scrutiny' of the ordinance must be made." *Salem Inn, Inc. v. Frank*, 522 F.2d 1045, 1047, 1049 (2d Cir. 1975). However, in a similar challenge to an ordinance which prohibited a female from appearing "topless" or a person of either sex appearing "bottomless" while serving food or beverages or "while 'participating in any live act, demonstration, or exhibition in any public place,'" the Supreme Court of California applied a rational basis standard of review, holding "the cases at bench neither involve a suspect classification nor touch upon a fundamental interest so as to require our application of the 'strict scrutiny test.'" *Crownover v. Musick*, 9 Cal.3d 405, 107 Cal.Rptr. 681, 684, 698, 509 P.2d 497, 500, 514 (1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974). It appears from our reading of these two cases that this difference can be accounted for by the fact the California Court concluded that the provisions of the ordinance were "directed at conduct" and not speech, while the Second Circuit concluded that there was "a modicum of expression" involved in nude dancing which was entitled to First Amendment protection.

█ In the instant case we have assumed, without expressly holding, that "topless" barroom dancing may be a form of protected expression under the First Amendment. However, given the minimal impact the ordinance has on this form of protected expression, we do not find it necessary to apply the "strict scrutiny" standard of review.

We hold that there is a rational basis for permitting displays of nudity in a theatrical environment while prohibiting such displays in a business such as a bar or tavern. Theatrical entertainers do not constantly mingle with the patrons in the way of waiters and waitresses. Also, "topless" entertainers performing in the intimate atmosphere of bars and taverns are likely to be in much closer proximity to the patrons than are those who perform on a stage or in a theater. Given the great likelihood of this close association between patrons and waitresses and/or entertainers, it is not unreasonable to anticipate breaches of the peace. There was, therefore, a rational basis for the Town Council to subject commercial establishments featuring nudity as a sales promotion to regulation in the interest of the general welfare of the community. *Crownover, supra.* The Town has a legitimate interest in preserving the quality of its urban environment. A scheme of regulation designed to control the commercial exploitation of nudity in order to enhance the general welfare is not arbitrary because it distinguishes between a forum where the purpose of the display of nudity is primarily commercial in nature and a forum where the display of nudity is inextricably linked to the exchange of ideas and free expression.

It is also alleged that since theaters are exempt from the proscription of the ordinance, a theater or similar establishment devoted to theatrical performances could employ "topless" usherettes.

 We do not agree with the plaintiff's interpretation of the ordinance as applied to theaters and similar establishments. We interpret Article IV of the ordinance (*see* Appendix A) to permit displays of nudity only in the context of theatrical performances, that is, by actors actually engaged in their profession. The purpose of the ordinance, as stated in Article I, is to regulate nudity as a form of commercial exploitation. Given this stated purpose, it is unreasonable to conclude that the drafters of the ordinance intended to create an exemption which would allow theaters to exploit nudity merely for commercial purposes. We read the theater exemption more narrowly, namely, as an attempt by the drafters to allow displays of nudity in a setting where such displays involve the free exchange and expression of ideas.

We therefore, conclude that the ordinance in the instant case does not violate the equal protection guaranty of the Fourteenth Amendment and Maine Constitution, Article I, Section 6–A.

The entry is:

Remanded to the Superior Court for entry of judgment for the Defendants.

POMEROY and DELAHANTY, JJ., did not participate.

### APPENDIX A

### TOWN OF OLD ORCHARD BEACH

### ORDINANCE CONTROLLING NUDITY IN LICENSED BUSINESSES

#### Article I—Purpose

*Section 1.1.* The purpose of this ordinance is to regulate nudity as a form of commercial exploitation and to regulate dress as a form of conduct and not to impede the free exchange and expression of ideas. The conduct regulated is that which the community and Town Council in public meetings have clearly found to be offensive to the general welfare, public safety, order and morals of the Town of Old Orchard Beach and its citizens.

#### Article II—Definitions

*Section 2.1.—Theater.* As used in this Ordinance, "theater" means (a) a building, playhouse, hall, or other place having a permanent stage upon which movable scenery and theatrical or vaudeville or similar performances are given and permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, or (b) a building, room, hall, or other place whose primary function is to present movies or motion pictures and which has a permanent movie screen and

permanently affixed seats so arranged that a body of spectators can have an unobstructed view of said screen, or (c) an open-air or "drive-in" movie having a permanently affixed movie screen and permanently affixed devices for broadcasting the soundtracks of movies of motion pictures inside of the patrons' vehicles.

*Section 2.2.—License Ordinance.* License Ordinance means the Ordinance authorizing the granting of municipal licenses for businesses within the Town of Old Orchard Beach as amended to the date on which the violation of this Ordinance takes place.

*Section 2.3.—Sales Person, Waiter, Waitress and Entertainer.* A person shall be deemed a sales person, waiter, waitress or entertainer if such person acts in that capacity without regard to whether or not such person is paid any compensation by the management of the establishment in which the activity is performed.

*Section 2.4.—Expose.* "Expose" or "Exposed" means unclothed or uncostumed or not covered by a fully opaque material.

### Article III—Prohibitions

*Section 3.1* It shall be unlawful for a person who, while acting as a sales person, waiter, waitress, entertainer or in any other capacity as an owner, manager, or employee in a business subject to license under the License Ordinance of the Town of Old Orchard Beach: (a) to expose his or her genitals, pubic hair, buttocks, perineum, or anus; or (b) to expose any portion of the female breasts at or below the areola thereof.

*Section 3.2.* It shall be unlawful for a person to cause, permit, procure, counsel, or assist any person to expose himself or herself as prohibited by Section 3.1 of this Ordinance.

*Section 3.3.* It shall be unlawful for a person operating a business subject to license under the License Ordinance of the Town of Old Orchard Beach to, at said place of business, display or cause or permit the display of photographs, covers of magazines, newspapers or other printed matter which expose or show genitals, pubic hair, buttocks, perineum, anus, or female breasts at or below the areola thereof, in such manner that such photographs, covers of magazines, newspapers, or other printed matter are visible to children or unwilling adults using the sidewalks, streets, or highways.

### Article IV—Exceptions

*Section 4.1.* Sections 2.1 and 2.2 [sic] of this Ordinance do not apply to: (a) a theater or similar establishment which is primarily devoted to theatrical performances or the presentation of movies.

*Section 4.2.* This Ordinance does not apply to any act authorized or prohibited by any statute of the State of Maine.

### Article V—Penalty

*Section 5.1.* Any act made unlawful by this Ordinance and any violation of this Ordinance shall be punishable by a fine of not more than $500 (five hundred) for each offense. Each day that such unlawful act or violation continues shall be considered a separate offense.

*Section 5.2.* In addition to any other penalty provided by the law, the commission of acts prohibited by this Ordinance shall constitute a nuisance and may be abated by the town seeking an injunction to prohibit further and continued violation thereof.

*Section 6.1.* If any section, subsection, sentence, clause, or phrase of this Ordinance is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Ordinance.