STATE of Maine

v.

NATIONAL ADVERTISING COMPANY.

Supreme Judicial Court of Maine.

Dec. 31, 1979.

Cabanne Howard (orally), Lester A. Olson, Legal Division, Department of Transportation, Augusta, for plaintiff.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier (orally), Waterville, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Defendant National Advertising Company has appealed from a judgment of the Superior Court (Cumberland County) requiring defendant to remove approximately 260 advertising billboards, pursuant to provisions of the Maine Outdoor Advertising Act of 1969, 32 M.R.S.A. §§ 2717–2723, inclusive, (1973 Supp.). Among other things, this statute, enacted as compliance legislation with the Federal Highway Beautification Act of 1965 (hereinafter "the federal statute"), established limitations upon the type and number of outdoor off-premises advertising signs permitted along roadways in Maine. The Maine statute made some 444 of defendant's advertising signs "nonconforming" signs. Of these the Maine State Highway Commission (hereinafter "the commission"), later succeeded by the Department of Transportation, classified more than two-thirds as signs to be eliminated by a process of amortization rather than by payment of just compensation in the exercise of eminent domain. Attrition has reduced that number to the approximately 260 signs ordered removed by the judgment of the Superior Court.

The issues now before us arise from further proceedings taken in consequence of a prior decision by this Court, *State v. National Advertising Company*, Me., 387 A.2d 745 (1978), remanding the case to the Superior Court.

Defendant challenges the constitutional validity of the Maine statute itself (now on grounds other than the "equal protection of the laws" attack made in the prior appeal), as well as the lawfulness of the commission's implementation of the statute.

We deny the appeal.

## I. The History of the Case.

This case has a lengthy factual and procedural history. To bring it sharply into focus in specific relation to the issues now being raised, we discuss the history of the

case in four aspects: (A) a brief description of the federal statute; (B) a brief description of the Maine statute; (C) a summary of the commission's implementation of the Maine statute as it relates to this case; and (D) a procedural history of this civil action.

### I–A The Federal Statute.[1]

In 1965 Congress passed the Highway Beautification Act to control and limit the erection and maintenance of outdoor advertising signs along interstate and primary roadway systems. To induce individual states to adopt equivalent, or more restrictive, standards the statute utilized a central strategy of conditioning a state's allocation of federal-aid highway funds upon the state's compliance with minimal "highway beautification" standards prescribed in the federal statute and herein referred to as "effective control." A state's failure to act with such "effective control" by a specified date resulted in a 10% penalty assessed against the state's share of federal-aid highway funds. *State of Vermont v. Brinegar*, 379 F.Supp. 606 (D.C.Vt.1974). *See generally*, Cunningham, *Billboard Control Under the Highway Beautification Act of 1965*, 71 Mich.L.Rev. 1310 (1973).

The "effective control" concept encompassed both "substantive" standards governing the type, size, and permissible location of roadway signs, and "procedural" standards to guide states in implementing the new outdoor advertising controls. In this appeal we are principally concerned with the "procedural" standards—in particular, the extent of the federal mandate for payment of just compensation to signowners.

Section 131(g) of the federal statute required that just compensation be paid to signowners for removal of certain classes of signs.

In addition, § 131(g) provided that the federal government would reimburse the states for 75% of the cost incurred in compensating for the removal of these signs.

Federal assistance was unavailable, and federal standards did not require payment of just compensation, for the removal of signs erected *lawfully* (according to state law) in a so-called "hiatus" period extending from October 22, 1965 to January 1, 1968.

In our prior opinion in this case, we explained that § 131(g) did not create in any signowner a "federal right" to receive just compensation for the elimination of any sign, regardless of whether it fell within the class specified in § 131(g). Rather, if a state saw fit to refrain from paying just compensation for a sign for which § 131(g) required such payment, the state ran the risk of incurring the 10% penalty against its federal-aid highway funds allocation. *See State of Maine v. National Advertising Company, supra*, at 748; *see also State of Vermont v. Brinegar, supra*; and *Markham Advertising Company v. State of Washington*, 73 Wash.2d 405, 439 P.2d 248 (1968).

Section 131(g)'s provision for just compensation to signowners for removal of a limited class of signs was amended in 1975 to require payment of compensation for all signs "lawfully erected" under state law. The effect of this amendment upon the signs here in question is discussed in part II–B of this opinion, *infra*.

Thus, the payment scheme, as well as the timetable for removal, became essential features of the "effective control" states were federally required to implement by January 1, 1968.

After the enactment of the federal statute the State of Maine, through the commission, entered into an agreement with the Secretary of Commerce (whose duties in this matter were later assumed by the Secretary of Transportation) whereby Maine adopted (and the Secretary approved of) controls for the regulation of outdoor advertising.[2] This agreement was ratified,

---

1. 23 U.S.C. § 131 is the part of the federal statute pertinent in this appeal.

2. 23 M.R.S.A. § 57 authorized the State Highway Commission to "make all contracts and do

all things necessary to cooperate with the United States Government in the construction and maintenance of public highways."

The commission had entered into a previous agreement with the Federal Highway Adminis-

and expanded upon, by the Maine Legislature in its enactment of the Maine Outdoor Advertising Act. *See State v. National Advertising Company, supra,* at 747.

### I–B The Maine Statute.[3]

Patterned after the state-federal agreement, the Maine statute established a minimum standard of regulations to control outdoor advertising signs along the roads in Maine. In addition to establishing a licensing procedure for all advertising signs, the statute set out limitations on the erection and maintenance of signs along state and federal highways, and established the methods by which the commission is authorized to eliminate the "nonconforming" signs and compensate, if at all required, the signowners.

Beginning with the effective date of the statute (October 1, 1969) all off-premises signs were required to conform to standards enumerated in § 2715 and § 2716. Those signs lawfully in existence on October 1, 1969 which subsequently became nonconforming to the standards had to be removed. The statute provided two basic methods for the ultimate elimination of nonconforming signs: (1) State acquisition by eminent domain (and payment of just compensation); (2) amortization. However, under Section 2719(6) the commission was authorized to acquire nonconforming signs by eminent domain *only* when the federal share of such compensation was available or the Maine Legislature had made a "specific appropriation for such acquisition."[4] Conversely, when the federal funding was not available, amortization was the method authorized for the elimination of nonconforming signs.[5] Where amortization was em-

---

tration in 1961 pursuant to the Federal-Aid Highway Act of 1956.

**3.** This Act, in effect at time of this action, was repealed and reenacted in the Maine Traveler Information Services Act, 23 M.R.S.A. §§ 1901–25.

**4.** 32 M.R.S.A. § 2719(6):

"The commission may acquire by the power of eminent domain all right, title, leasehold or any interest in nonconforming signs, and the property right to maintain signs not in conformity with this chapter when and only when the federal share of just compensation prescribed in the Highway Beautification Act of 1965 and the Federal-Aid Highway Act of 1968 is available to the State of Maine or the Maine Legislature makes a specific appropriation and such acquisition shall be in accordance with a priority to be established by the commission."

**5.** 32 M.R.S.A. § 2719(7):

"When the federal share of just compensation for the removal of nonconforming outdoor advertising signs as prescribed in the Highway Beautification Act of 1965 and the Federal-Aid Highway Act of 1968 is not available to the State of Maine or when the immediate removal of nonconforming outdoor advertising signs is not required but removal via regulation over an extended period of time is satisfactory, the commission is authorized to use the police power of the State to establish a reasonable amortization period which will be long enough to allow recoup-

ment of the capital investment which these nonconforming signs represent but which contemplates that at the end of this period the nonconforming sign will be removed by the owner without compensation. The length of the amortization period may vary for different types of signs but in no case shall it be longer than 5 years. Determination of amortization periods for different types of signs will be made by the commission based on the original value of the sign, the ease of its removal to a conforming area, the length of time the sign has been in use in its present location, the present physical condition of the sign, and any other factors which fairly reflect its present capital value, the returns to the owner which the sign has already produced, and the returns to the owner which the sign ought to be allowed to produce in the future before its uncompensated removal is ordered."

Although resort to eminent domain and the payment of just compensation is thus conditioned on the availability of federal funds for the purpose, § 2719 is open to an interpretation that even if federal funds are available, where immediate removal of signs is not required, the State may use amortization. On such an interpretation, however, the 10% penalty comes into play if signs for which compensation was denied are eligible for federal assistance under § 131(g). *See State of Vermont v. Brinegar,* 379 F.Supp. 606 (D.C.Vt.1974); 42 Opinion of Attorney General 331, Nov. 16, 1966. Because we believe that the purposes of the 1968 agreement between the commission and the federal

ployed, § 2719(7) authorized the commission to set individual periods for each sign, according to standards contained in § 2719.

### I–C Administration of the Maine Statute.

After the enactment of the Maine statute, the commission began notifying signowners that certain signs did not conform to the standards in the Maine law, by stamping the word "nonconforming" on each of the permits issued. A commission staff member notified all signowners by letter, on December 15, 1969, that certain signs no longer conformed to the federal law, that signowners would be notified when the commission had established an amortization period for each sign, and that the maximum amortization period would be five years.

After issuing the first set of permits under the Maine statute and, by stamping each permit, identifying those nonconforming signs subject to removal under the Maine law, the commission held a public hearing on June 3, 1970 to seek input from signowners on formulating proper criteria under § 2719(7) for fixing individualized amortization periods. Defendant National Advertising Company appeared and offered its views. At its next meeting on June 17, 1970, the commission formally adopted criteria for the determination of appropriate individualized amortization periods.

Subsequently, however, a decision was made to abandon individualized amortization periods and to allow, instead, all signs the maximum five year period for amortization. This decision was made by the departmental staff, who assumed that the commission itself was regularly informed. Apart from the initial adoption of the individualized amortization period criteria, the commission as a body took no formal action.

After, in May 1971, the first federal funds were earmarked by the federal government for payment of just compensation under § 131(g), the commission notified signowners that acquisition of those signs eligible for federal compensation would be by purchase or condemnation. Additionally, a commission staff member sent defendant a letter expressing intent to amortize the signs at issue in this case. Again, the letter indicated that if federal funds became available *before* the time period for amortization expired ("sometime in 1974"), signowners would be paid. This was the first notice to signowners identifying specifically which nonconforming signs would be amortized rather than acquired by eminent domain.

Neither the commission acting in its formal capacity nor defendant indicated any objection, during the five year period, to the amortization program that was being implemented by commission staff.

### I–D Procedural History of This Action.

In October 1974, five years after the Maine statute took effect, the commission instituted injunctive proceedings under § 2717(4) to compel removal of the approximately 260 signs of defendant that had been amortized.

The case was referred to a Referee who recommended after a hearing that judgment be entered for defendant on the basis that the Maine statute—and more specifically the distinction it makes between compensable and noncompensable signs, as here applied to make signs subject to amortization rather than acquisition by eminent domain solely on the criterion of the unavailability of federal funds—was unconstitutional as a violation of the equal protection of the laws. The State took an appeal to this Court. We overturned the Superior Court's entry of judgment for the defendant based upon the Referee's recommendation and remanded to the Superior Court for further proceedings. *State v. National Advertising Company, supra.* Defendant neither cross-appealed nor briefed other arguments. Our conclusions in that appeal which bear upon

government constituted the primary, controlling standard governing all commission action in this sphere, we would deem it an unreasonable alternative of action for the commission to

depart from the terms of that agreement and subject the State to the risk of the 10% penalty.

the instant appeal were: (1) that the legislative classification of advertising signs conditioning compensability upon the availability of federal funds was not arbitrary or violative of equal protection; (2) that at the *time the action was commenced* (October 1974), the Federal Highway Beautification Act did not mandate payment of compensation for removal of signs.

Without further hearings, and based upon review of the transcript of proceedings before the Referee, the Superior Court on remand held for the State on all the issues now being raised before us. Defendant's timely motion for findings of facts was denied by the Superior Court (because some of the proposed factual findings proposed were "not germane" to the delineated issues, and there existed an adequate basis for appellate review). The Superior Court stayed the injunction pending this appeal.

*II. The Substantive Issues of the Appeal.*

Defendant National Advertising Company raises the following four foundational issues on appeal: (1) that the commission's failure to meet and adopt *formally* a policy for the removal of nonconforming signs renders invalid the implementation program undertaken; (2) that the commission's failure to make formal findings concerning the availability of federal funds violated an essential precondition of the exercise of the police power to amortize nonconforming signs pursuant to § 2719(7); (3) that the Maine statute's provisions for the elimination of signs by amortization or eminent domain constitutes a denial of substantive due process, and the amortization provisions alone amount to an unconstitutional taking; (4) that the amortization provisions of §§ 2719(6) and (7) are an unconstitutional delegation of legislative power to the commission.

II–A.

The contention of invalidity in terms of the lack of formal action by the commission to adopt a policy for the removal of nonconforming signs and settle upon an amortization program covering the period from October 1, 1969 (the effective date of the Maine statute) to October 1, 1974 is directed to two facets of the statute. First, defendant says that the commission has authority to act only in accordance with those general powers conferred by 23 M.R.S.A. § 51, which requires that "all policy decisions of the commission must be [decided] by a majority of its total membership." Second, defendant maintains that the statutory delegation of powers to the commission is a general delegation, therefore lacking any specific mandate that would make the statute "self-executing." Hence, defendant argues, the commission was required to act in a formal capacity, pursuant to 23 M.R.S.A. § 51, to implement the Maine statute's directives and to determine the most suitable method of removing the nonconforming signs.

We analyze these arguments by relating them specifically to three discrete phases of the commission's decision-making process: (1) the commission's failure to decide formally to adopt the policy of eliminating "nonconforming" signs (rather than not to eliminate them); (2) the commission's failure formally to choose and justify a decision whether to resort to eminent domain or to amortize; and (3) the commission's failure to adopt formally the uniform five year amortization period allowed each sign.

II–A–(1).

Defendant's argument that the commission was required to act to adopt *the* policy to remove signs misconstrues the nature of the Maine legislation. An examination of the background federal legislative scheme and a comparison of it with the subsequently enacted Maine statute reveals plainly that the commission was not required to take any formal action in order to implement *per se* a removal policy. As we noted in *State v. National Advertising Company, supra,* the Maine statute was enacted to ratify an agreement reached between the State (through the commission) and the Federal Department of Transportation wherein the State agreed to implement a program of regulation of roadside advertising signs along federal interstate and pri-

mary highway systems. The stated purposes of the agreement make clear that the State of Maine sought to comply fully with the standard of "effective control" in order to remain eligible for the full allocation of federal-aid highway funds and to qualify for a bonus allocation of funds (for prompt compliance with the federal standards).[6] Because the overriding purpose of the agreement was to bring the State in line with federal standards to avoid the 10% penalty, and because the Maine statute was a necessary ratification of the agreement, it cannot reasonably be argued that the legislative intendment was to allow the commission authority to contravene the letter or spirit of the agreement and thereby risk subjecting the State to the penalty. Hence, although the statute does not in express terms direct the commission to adopt *the* policy of removal of nonconforming signs (rather than to do nothing) such mandate must be held implicit; a contrary interpretation would defeat the entire foundation upon which the statute rested.

### II–A–(2).

◼ Defendant next argues that this Court should nullify the amortization program regarding the signs at issue because the commission as such failed to make a formal determination as to which of the two methods, eminent domain or amortization, was to be used to achieve the ultimate elimination of nonconforming signs.

Under the provisions of § 2719(6) it was open to the commission to *choose* eminent domain (and payment of just compensation) rather than amortization *only if* (1) federal funds were available to assist the State in paying just compensation or (2) the Maine Legislature had made a specific appropriation for such a purpose.[7] Here, the record shows no specific appropriation by the Legislature. We are satisfied, too, that the record settles as fact that federal funds were unavailable for the purpose of paying just compensation as to the signs at issue when the amortization program as to them was initiated and while it was in process of completion.[8]

Thus, the record presents us with a situation in which, in fact and by law, the commission had *no choice* to make: amortization was the only course that could be embarked upon as to the signs here at issue. In such circumstances, this Court would be acting irresponsibly, indeed, were it at this late stage to nullify the amortization pro-

**6.** The agreement said in part:
"The State hereby agrees that, in all areas within the scope of this agreement, the State shall *effectively control,* or cause to be controlled, the erection and maintenance of *outdoor advertising signs, displays and devices* erected subsequent to the effective date of this agrement [sic]" (emphasis added), and,
"the State desires to implement and carry out the provisions of Section 131 of Title 23, United States Code, and the National policy *in order to remain eligible to receive the full amount* of all Federal-aid Highway Funds after January, 1968."

**7.** Section 2719(6) so provides by its textual language, and this Court affirmed that literal meaning when it stated explicitly in its prior decision in this case that:
"the Legislature specifically provided that the State could use its power of eminent domain to remove nonconforming signs . . . *'when and only when'* the federal share of

compensation was available or when the Legislature made a 'specific appropriation' for such an acquisition." (387 A.2d at 750) (emphasis added)

**8.** This is shown by all of the correspondence between the signowners and the commission as well as the finding of the Referee, adopted by this Court in its prior opinion (387 A.2d at 749), that, in the words of the Referee, "[b]ecause of the lack of Federal funds available for compensation" amortization was used for the signs erected between October 22, 1965 and October 1, 1969.
Moreover, that federal funds were thus unavailable was the fact which made actual and live the constitutional issue previously decided by this Court as to a claimed violation of equal protection of the laws. Absent that fact, the Referee and this Court, in accordance with sound practice, need not have addressed that constitutional question.

gram in question, now completed, on the ground that the commission failed to make an initial formal choice between eminent domain (with payment of just compensation) and amortization when, as it is now made to appear, there was no such choice to be made.

### II–A–(3).

■ Lastly, with respect to this general issue of lack of formal action by the commission, defendant argues that the commission's failure formally to decide upon a uniform five year period for all signs (even though the staff of the commission did, in fact, implement such a policy) requires that this Court nullify the entirely implemented amortization program.

This contention is made in relation to the following facts. At a June 17, 1970 meeting, the commission formally adopted criteria by which to determine appropriate individual amortization periods. Although this determination was not formally revised or altered in any way,[9] a decision was reached within the agency by the commission staff to allow all signs that would be amortized to stand for the full five year period allowed by § 2719(7). Through a series of letters, commission staff notified defendant of this decision and of the date of termination of the amortization period, October 1, 1974.

We conclude that in the particular circumstances of this case the failure of the commission to act formally to fix the period (or periods) for amortization does not require that the amortization program as implemented by the commission staff be nullified by this Court as invalid.

First, we discern no sound reason in policy or fairness to recognize a right in defendant National Advertising Company (or any other signowner) afforded the benefit of the full five year period fixed by statute as the maximum allowable for amortization to complain because the determination to allow that maximum period was reached without formal action by the commission as

such. We have already decided that under § 2719(7), as applied to the circumstances shown of record in this case, amortization was the only method statutorily authorized for the elimination of the signs at issue. This being so, the only remaining decision for initiating the amortization program was the length of the particular periods to be prescribed for particular signs. Although the commission's adoption of criteria in this regard may have indicated some initial thinking by the commission that individual amortization periods of varying duration might be in order, the statutory maximum period of five years which became operative for all of the signs in question was the most beneficial kind of amortization that could be afforded. Hence, defendant will not be heard to complain of the technicality of a lack of formal action by the commission which was not injurious to it.

Second, the record before us indicates that the determination made by the administrative staff was recognized, and acquiesced in, by the Commissioner of Transportation, the official who, under a 1972 reorganization of the State Highway Commission, became invested with the full, and ultimate, authority to handle the implementation of the Maine statute. A letter written by the Commissioner in April 1974 discloses that at some point subsequent to the implementation of the five year amortization program he had fully approved that program as the maximum amortization benefit statutorily permitted.

In light of all of these circumstances it would be a purposeless, if not a ridiculous, elevation of form over substance were this Court now to nullify the already completed amortization program on the ground that it was initiated without a formal determination by the commission, as such, to afford defendant the benefit of the maximum five year period of amortization.

### II–B.

■ As somewhat related to its first point on appeal but yet distinct from it,

9. The State stipulated that no formal commission action was undertaken to amend the June 17th resolution.

defendant makes a second basic contention: that it was fatal to the legality of the amortization program under consideration, requiring that it now be nullified as to its effectiveness, that throughout the period during which amortization was in progress the commission at no time made a formal finding specifically determining as fact that federal funds were unavailable. In support of this contention defendant says that the exception to the general federal mandate that nonconforming signs be eliminated by payment of just compensation—the exception being that the federal law did not require payment of just compensation for signs lawfully erected in the hiatus period, *see State v. National Advertising Company, supra,* at 748—was eliminated by subsequent amendments to the federal statute. Defendant relies specifically on a 1975 amendment to § 131(g)[10] which removed the distinction between those signs erected before the effective date of the federal legislation and those erected in the hiatus period.

The legislative history and the express language of the 1975 amendment relied on by defendant does indicate a federal intention that, *in general,* the owners of signs lawfully erected in the hiatus period should receive just compensation as the method for eliminating those signs. We nevertheless conclude that the 1975 amendment had no application to the *particular* signs at issue in the present case because they had become *illegal* signs under State law by the time that the 1975 amendment to the federal statute became effective.

The 1975 amendment broadly makes compensable any "nonconforming" sign lawfully erected. The critical distinction must be drawn, however, and in fact is drawn by both the Federal Highway Administration (hereinafter FHWA) and the Maine Department of Transportation (as successor to the Maine State Highway Commission), between "nonconforming" signs and signs which are "illegal" under State law, as to which the 1975 federal amendment was inapplicable.

The policy of the FHWA in implementing the amended § 131 is clarified by two sources. First, in the regulations accompanying 23 U.S.C. § 131, the policy underlying the amended § 131(g) is stated to be as follows:

> "Just compensation shall be paid for the rights and interests of the sign and site owner in those outdoor advertising signs, displays, or devices which are <u>lawfully existing</u> under State law, in conformance with the terms of 23 U.S.C. 131." 23 CFR § 750.302(a) (emphasis added)

Thus, a distinction is drawn between signs lawfully existing and those illegally existing. Second, a February 1975 Transmittal from the FHWA to the Maine Department of Transportation discussed the reach of the 1975 amendment as it pertained to the § 131(g) requirement for payment of just compensation. After setting out language from both Senate and House reports, both of which called for an assurance that sign-owners would be duly compensated, the FHWA interpreted the amendment as follows, drawing one critical distinction:

> "The effect of this amendment is to provide just compensation for all signs which become nonconforming and subject to removal under State law enacted for the purpose of complying with the Highway Beautification Act. It does not provide compensation for signs which are <u>illegal under State law.</u>" FHWA Notice, N 6620.2, Federal-Aid Highway Program Manual, Transmittal 117, 2/6/75 (emphasis added)

 The underscored language in both the federal regulation and the FHWA Transmittal establishes that the 1975 federal amendment did not intend to require just compensation for those signs which had become *illegal* under State law, as distinguished from being merely nonconforming signs. The definitions of "nonconforming" and "illegal" appear in the Regulations accompanying 23 U.S.C. § 131. A "nonconforming" sign is defined as a sign

---

**10.** Federal-Aid Highway Amendments of 1974, Pub.L. 93–643, 88 Stat. 2281.

"lawfully erected, but which does not comply with the provisions of State law or State regulations passed at a later date or which later fails to comply with State law or State regulations due to changed conditions." 23 CFR § 750.303(e).

That definition continues to state that "*illegally* erected *or maintained* signs are *not nonconforming* signs." (emphasis added) An "illegal" sign is defined as "one which was erected and/*or maintained* in violation of State law." 23 CFR § 750.303(d) (emphasis added).

The critical language in these definitions is "or maintained." Although the signs here in issue were lawfully *erected* under State law (because they were erected prior to the effective date of the Maine statute), they cease to *exist lawfully* after the five year amortization period ended on October 1, 1974. Section 2719(7) requires that if the commission establishes an amortization period, "in no case shall . . . [that period] be longer than 5 years."[11] In the instant case, it had been determined that the full five year amortization period should apply for all signs, commencing on the effective date of the statute and ending five years later on October 1, 1974. Thus, once the amortization period expired, the "nonconforming" signs were no longer *legally authorized to exist*, and refusal to remove the signs after that date resulted in the maintenance of the signs in violation of State law, that is, as *illegal* signs.

Indeed, this was the analysis of the Maine Department of Transportation in applying the Maine law to the signs involved in this case. The letter from Commissioner Mallar previously mentioned in this opinion reveals that the DOT's intention to remove these signs rested on its determination that they would be illegal under the law of Maine. The letter says:

"This group of signs represents those signs erected after the effective date of the Federal Highway Beautification Act (October 22, 1965) and before the effective date of Maine's compliance law (October 1, 1969).

"Since Federal funds for such signs are not currently available, Maine Outdoor Advertising law requires that these signs be removed via amortization without compensation, over a period not to exceed 5 years from the date upon which they became nonconforming.

"The maximum 5-year amortization period will be up October 1, 1974, *after which remaining signs in this category will become illegal.*

"The Right of Way Control section of the Maine Department of Transportation has notified the owners of Amortization signs periodically over the past four years that these signs must be removed without compensation on or before October 1, 1974."[12] (emphasis added)

The FHWA also acknowledged that the signs would be thus illegal. Responding to the letter of Commissioner Mallar, the FHWA wrote:

"Although the signs identified in your letter are *not now* illegal, they could be programmed at this time. It would be

---

**11.** This limitation is consistent with the federal statutory standard. 23 U.S.C. § 131(e) states:

"Any sign, display, or device lawfully in existence along the Interstate System or the Federal-aid primary system on September 1, 1965, which does not conform to this section shall not be required to be removed until July 1, 1970. Any other sign, display, or device lawfully erected which does not conform to this section shall not be required to be removed until the end of the fifth year after it becomes nonconforming."

The purpose of § 131(e) is to set a five year amortization period. *See* H.R.Rep. No. 1084, 89 Cong., 1st Session *reprinted in* 1965 U.S. Code Cong. & Admin.News, pp. 3710, 3715.

Arguably, a state's failure to comply with this standard by allowing nonconforming signs to exist longer than 5 years from the initial date of the nonconformity might bring into play the 10% penalty. cf. *State of Vermont v. Brinegar, supra.* Thus, the five year amortization period provided for in § 2719(7) of the Maine statute could be construed as a maximum five year allowance, ending October 1, 1974. The currently effective amortization provision, however, allows a six year period. *See* 23 M.R.S.A. § 1916 (Supp.1979).

**12.** Letter from Roger Mallar, Commissioner of Maine Department of Transportation, to R. D. Hunter, Division Engineer, U.S. Department of Transportation, FHWA, April 30, 1974.

good to get the paper work done in advance so *that the State can take immediate action as soon as possible after October 1, 1974.*"[13] (emphasis added)

We conclude that even if the 1975 amendment broadened the class of *nonconforming* signs eligible for compensation, the signs at issue in this case did not thus qualify. The established amortization period for them having expired prior to the effectiveness of the 1975 amendment, the continued maintenance of these signs would be in violation of state law and, therefore, *their status* had been transformed from nonconforming into *illegal.*

### II–C.

■ Defendant raises a third foundational point on appeal: that the Maine statute's provision for elimination of nonconforming signs by amortization is unconstitutional because it violates substantive due process of law[14] and effectuates a taking of defendant's property without payment of just compensation for it. Well settled case law shows these claims to be unfounded.

■ The contention that a statute enacted as a purported exercise of a state's police power is unconstitutional, as violative of substantive due process of law, precipitates three inquiries: (1) whether the objective of the exercise of the police power is legitimately within the scope of police power action; (2) whether the means employed are appropriate to the achievement of the objective; and (3) whether the manner in which the power is exercised is arbitrary or

capricious. *State v. Rush,* Me., 324 A.2d 748 (1974); *see also Inhabitants of Boothbay v. National Advertising Company,* Me., 347 A.2d 419 (1975).

■ Evaluated in these respects, the Maine statute is constitutional, as in conformity with the requirements of substantive due process. Its stated purposes—promotion of highway safety, protection of public investment in highways, and enhancement of natural scenic beauty—are commonly recognized as legitimate police power objectives. *See State v. National Advertising Company, supra* ; *Inhabitants of Boothbay v. National Advertising Company, supra; Suffolk Outdoor Advertising Company v. Hulse,* 43 N.Y.2d 483, 402 N.Y. S.2d 368, 373 N.E.2d 263 (1977); *Markham Advertising Company v. State of Washington,* 73 Wash.2d 405, 439 P.2d 248, app. dism'd. 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512, reh. den. 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813 (1969); 81 A.L. R.3d 486, 509–15.

Moreover, as we held in *Inhabitants of Boothway, supra,* and *State v. National Advertising Company, supra,* resort to amortization to eliminate nonconforming billboard signs is an appropriate method to achieve the goals that are, in the context now before us, legitimate objectives of the exercise of the police power.

As we interpret defendant's position on this point, defendant is not really challenging the particular manner of amortization, as here applied, as unreasonable.[15] The

---

13. Letter, R. D. Hunter to Commissioner Roger Mallar, May 6, 1974.

14. Some of defendant's phrasing of the alleged "due process" violation suggests that defendant seeks to resurrect its "equal protection of the laws" contention rejected by us in our prior opinion in this case. We limit our consideration in the instant appeal to the validity, under substantive due process standards, of amortization as such. We conclude that if amortization is thus valid, then inclusion of both amortization and eminent domain methods as alternative modes of removal does not violate constitutional guarantees. Defendant's claim that the statutory provision authorizing both methods tacitly acknowledges the "protected right"

to just compensation while simultaneously ignoring that very right (by providing for amortization of some signs and eminent domain for others), is unsound because its premise is wrong; there is no *protected right* to be paid just compensation for the extinguishment of a "nonconforming" sign. *See Inhabitants of Boothbay v. National Advertising Company,* Me., 347 A.2d 419, at 424 (1975).

15. As applied to the particular facts of this case, the requirement of the Maine statute that the signs at issue be amortized (for lack of availability of federal funds) could not be held to violate substantive due process of law. The record before us shows nothing to cause us to depart from the view recognized in this con-

claim is, rather that the statutory provision is constitutionally invalid on its face because it mandates amortization when federal funds are unavailable to assist in the payment of just compensation. Such facial attack must be rejected in light of the overwhelming precedential authority to the contrary already discussed.

Lastly, to resort to amortization is not arbitrary or capricious action. As we decided in *State v. National Advertising Company, supra,* use of amortization to remove signs when federal funding is unavailable to defray the cost to the State of paying just compensation, or when just compensation is not required by the federal standard of "effective control", reasonably furthers the permissible State objective of conserving State fiscal resources.

█ Turning to defendant's contention that the Maine statute is an unconstitutional taking of property without just compensation, we find the ground for rejecting this claim in our disposition of a similar challenge to a municipal ordinance regulating off-premises signs. In *Inhabitants of Boothbay v. National Advertising, supra,* the challenged ordinance banned off-premises billboards and advertising signs "visible from the public way." The erection of new nonconforming signs was prohibited. As to those in existence on the date the ordinance became effective, a 10 month period was fixed during which the signowner could amortize the investment.

In response to the signowner's challenge that the ordinance effected an unconstitutional taking of property, we held:

> "[t]he consequences of the instant ordinance are not a taking; the billboard is neither condemned, nor is it seized and dedicated to the public purpose. Rather, the ordinance requires the (defendant) and others similarly situated to refrain from the use or maintenance of their property in a manner which that enactment determines to be injurious and un-

text, that a five year amortization period is reasonable and adequate to allow the recoupment of the signowner's investment. *See E. B. Elliott Advertising Company v. Metropolitan*

lawful under the police power." Id. at 424.

In addition, we further noted that to succeed in an attack on the ordinance as an unconstitutional "taking of property" the signowner must make a showing that the governmental action substantially impaired or vitiated a property interest. We held that no such showing had been made.

Here, defendant has similarly failed to demonstrate that the statute effected an unconstitutional "taking of property." There was no seizure of property for dedication to public use. Defendant's property interest in the signs, relative to their cost and intrinsic value, was not diminished by the regulation; the signs could be removed and re-erected in an area legally authorized. Alternatively, they could be converted for salvage value. Also, the five *year* period of amortization here allowed was far more advantageous to defendant than the merely nine *month* "tolerance period" fixed by the ordinance in *Boothbay.* Defendant has offered no evidence to show that the length of the amortization period was insufficient to permit adequate recoupment of defendant's investment in the signs or that it was arbitrary in any other respects.

### II–D.

█ The last of defendant's basic points on appeal is that §§ 2719(6) and (7) are facially invalid as unconstitutionally delegating legislative power to the commission. The argument is that under these statutory provisions the commission has an unfettered discretion to choose to amortize nonconforming signs rather than to acquire them by eminent domain (and payment of just compensation) *even though federal funds are available to defray 75% of the cost of eminent domain acquisition.*

The contention fails. The statute provides an intelligible primary principle to guide, and limit, the administrative action in such context.

*Dade County,* 425 F.2d 1141 (5th Cir. 1970), cert. dism'd. 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970).

As we decided in *State v. National Advertising Company, supra,* at 750–751, "inextricably joined" as the underlying purposes of the statute are a control of outdoor advertising signs to be achieved at a minimum cost to the State of Maine. That this predominant objective of minimizing State costs is implicit throughout the statute, and may nowhere be explicitly stated, does not preclude resort to it as an intelligible primary principle for the channeling of administrative action, thereby to satisfy whatever may be the constitutional requirements for valid delegations of power to administrative bodies. *City of Biddeford v. Biddeford Teachers Ass'n.,* Me., 304 A.2d 387 (1973).

Thus, were there a situation where federal funds would be available to assist this State in acquiring nonconforming signs by eminent domain (and payment of just compensation), and the immediate removal of the signs were not required, under §§ 2719(6) and (7) the commission would have authority to amortize the signs *only if* the particular circumstances of the availability of federal funds to assist in the payment of just compensation were such (if possible at all) that amortization could be utilized *without subjecting the State to the 10% penalty of the federal share of federal aid highway costs.* Unless this were so, the commission would be acting contrary to the primary principle of keeping the costs to the State at a minimum. *See* n.5, supra.

In short, far from being unfettered, the discretion available to the commission under §§ 2719(6) and (7), if it has any latitude at all, is confined within very stringent limits.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and GLASSMAN, J., did not sit.